1  Jack W. Lee, Esq. (SBN 071626)
   Lisa Duarte, Esq. (SBN 169750)
2  John Ota, Esq. (SBN 195532)
   MINAMI, LEW & TAMAKI LLP
3  360 Post Street, 8th Floor
   San Francisco, CA 94108
4  (415)788-9000
   Fax (415) 398-3887
5
   Attorneys for Plaintiffs
6

7                          **E-filing**

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12                                    **Case No. C 04 4730**

13  ELIZABETH WEST and JENNIFER LU,
    on behalf of themselves and all others
14  similarly situated,                **CLASS ACTION**

15             Plaintiffs,              1. **GENDER DISCRIMINATION (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e,** *et seq.***)**
16      v.
17  ABERCROMBIE & FITCH STORES,
    INC., A & F, LLC, ABERCROMBIE &    2. **GENDER DISCRIMINATION (CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT – Cal. Gov. Code § 12900,** *et seq.***)**
18  FITCH MANAGEMENT CO. AND A & F
    OHIO, INC Defendants.
19
                                        **DEMAND FOR JURY TRIAL**
20

21

22

23

24

25

26

27

28

WEST ET AL. vs. ABERCROMBIE                          CLASS ACTION COMPLAINT

Individual and Representative Plaintiffs ELIZABETH WEST and JENNIFER LU ("Plaintiffs") on behalf of themselves individually and all others similarly situated, allege, upon personal knowledge as to themselves and information and belief as to other matters, as follows:

1. Defendants ABERCROMBIE & FITCH STORES, INC., A & F, LLC, ABERCROMBIE & FITCH MANAGEMENT CO. AND A & F OHIO, INC. (hereinafter collectively identified as "ABERCROMBIE") are a national retailer of clothing. ABERCROMBIE discriminates against individuals on the basis of gender with respect to hiring, firing, job assignment, compensation, managerial promotion and other terms and conditions of employment by enforcing a national policy of preferring male employees for retail store positions and for retail store management jobs, including, but not limited to, retail store employees, managers-in-training, assistant managers, and store managers

2. ABERCROMBIE recruits, hires, and maintains a disproportionately male sales force (called "Brand Representatives") who act as salespeople and recruiters of other potential Brand Representatives.

3. ABERCROMBIE systematically refuses to hire qualified women applicants as Brand Representatives, stockers (employees who handle inventory) and overnighters (employees who work night shifts) in proportion to their percentage of the pool of qualified and interested prospective employees. ABERCROMBIE applies a strict numerical limit on the number of women Brand Representatives, stockers and overnighters who should be hired, and/or on the number of women Brand Representatives who should be on the sales floor. ABERCROMBIE also discourages applications from women applicants and fires qualified women Brand Representatives and retail store employees in order to retain or hire more males.

4. When women inquire about employment, ABERCROMBIE managers often inaccurately tell them that the store is not hiring, or give them applications without any intention of considering them for employment.

5. ABERCROMBIE discriminates against women through careful scrutiny and monitoring of its stores by regional and district managers and corporate representatives.

These managers and corporate representatives frequently visit stores to ensure, among other things, that the store is properly implementing ABERCROMBIE's discriminatory employment policies and practices. These visits are referred to as "blitzes." Managers or corporate representatives have directed that women Brand Representatives be fired, moved to the stock room or overnight shift, limited to less desirable floor positions or have their hours "zeroed out," which is the equivalent of termination.

6. ABERCROMBIE systematically denies women the opportunity to participate in manager-in-training programs or to be considered for management positions as assistant store managers and store managers.

7. This class action is brought by women applicants and employees who applied for sales, stocking, managers-in-training, assistant store managers and store manager positions on behalf of themselves individually and all other women applicants and employees against whom ABERCROMBIE has discriminated against on the basis of gender. ABERCROMBIE has maintained and continues to maintain a pervasive policy or practice of discrimination based on gender in denying employment, desirable job assignments, job transfers, allocation of weekly hours, compensation, promotion to management positions, and other terms and conditions of employment to women in ABERCROMBIE stores throughout the United States.

8. This action seeks an end to these discriminatory policies or practices. Plaintiffs also seek an award of back pay and front pay, as well as compensatory damages, punitive damages, and injunctive relief, including reinstatement or instatement, for all class members.

## JURISDICTION

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42

U.S.C. § 2000e-5(f)(3). Defendant ABERCROMBIE is a Delaware corporation licensed to do business in California, has retail stores throughout California and this District, and is subject to personal jurisdiction in this district. Members of the Plaintiff class reside in California and throughout the United States, and discriminatory acts alleged in this Complaint occurred in California and other states.

## INTRADISTRICT ASSIGNMENT

11. Assignment to the San Francisco-Oakland District of California is proper because this action is related to *Gonzalez v. Abercrombie & Fitch Stores, Inc.*, No. Dist. Cal. Case No. 03-2817 SI, which has already been assigned to the San Francisco-Oakland District. Assignment of this case to a single court is likely to conserve judicial resources and promote an efficient and consistent determination of the actions. *Gonzalez v. Abercrombie & Fitch Stores, Inc.*, initially filed on June 16, 2003, is another pending class action employment discrimination case against ABERCROMBIE for discriminating against applicants and employees on the basis of race, color and/or national origin. Plaintiff JENNIFER LU, an Asian American woman, is also a named plaintiff and putative class representative in the *Gonzalez v. Abercrombie & Fitch Stores, Inc.* matter.

## PARTIES

12. Plaintiff ELIZABETH WEST is a woman resident of El Segundo, California. On or about September 1, 2003, she applied for and was denied a Brand Representative position at an ABERCROMBIE store in Redondo Beach, California, because of her gender. She was denied the position despite her extensive prior retail experience.

13. Plaintiff JENNIFER LU is an Asian American woman resident of West Covina, California. On or about February 9, 2003, she was terminated as a Brand Representative at an ABERCROMBIE store in Costa Mesa, California, because of her gender and/or race.

14. Defendant ABERCROMBIE & FITCH STORES, INC. is an Ohio corporation. Based on the representations of defendants, from July 1996 to August 2000, during which time it was a Delaware corporation, ABERCROMBIE & FITCH STORES, INC. operated

all California ABERCROMBIE stores; from August 2000, when it became an Ohio corporation, to May 2002, it operated all ABERCROMBIE stores; and since May 2002, it has operated all ABERCROMBIE stores outside of California and Ohio.

15. Defendant A & F CALIFORNIA, LLC is an Ohio limited liability company. Based on the representations of defendants, since May 2002, it has operated all ABERCROMBIE stores in California.

16. Defendant A & F OHIO, INC. is an Ohio corporation. Based on the representations of defendants, since May 2002, it has operated all ABERCROMBIE stores in Ohio.

17. Defendant ABERCROMBIE & FITCH MANAGEMENT CO. is an Ohio corporation. Based on the representations of defendants, the MANAGEMENT CO. operates all corporate offices in Ohio.

18. Defendants are a national retail clothing seller primarily marketing to teenagers and young adults. According to ABERCROMBIE, it took in $1.7 billion in net sales during fiscal year 2003. According to its Year 2003 Annual Report, ABERCROMBIE operates 700 retail stores nationwide.

19. ABERCROMBIE operates stores under three different names: "Abercrombie & Fitch" (the "adult" store), "Hollister," and "abercrombie" (the "children" store). Although each type of store offers different product lines, all stores follow the same human resources policies and practices, participate in the same discrimination, and are run by the same management. Applicants to and employees of each type of store are included in the proposed class.

## CLASS ACTION ALLEGATIONS

20. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a class of all past, present, and future women ABERCROMBIE retail store employees and applicants for retail store positions and/or management positions with ABERCROMBIE who have been, continue to be, or in the future may be discouraged from

applying or denied employment, desirable job assignments, job transfers, desirable hours, compensation, promotion to management-in-training and other management positions, other terms and conditions of employment on the basis of their gender, and/or who have been terminated on account of the policies or practices complained of herein. The discriminatory policies and practices complained of herein have existed since at least February 24, 1999.

21. Plaintiffs are members of the class they seek to represent.

22. The members of the class identified herein are so numerous that joinder of all members is impracticable. The number of class members is currently indeterminate, but is certainly larger than can be addressed through joinder. According to its Year 2003 Annual Report, ABERCROMBIE had approximately 30,000 employees. In addition, temporary employees are hired during peak periods, such as the holiday season. The addition of this large temporary workforce swells the proposed class by thousands more. Almost all of ABERCROMBIE's 700 stores employ some women in retail store positions but each store, on average, annually receives tens of thousands of applications from qualified women who are potential retail store employees. As a result of ABERCROMBIE's systematic discriminatory hiring practices, an unknown number of women applicants have also been deterred from applying. Thus, although the precise number of qualified women applicants who are not hired and/or who are fired or otherwise discriminated against is currently unknown, it is far greater than can be feasibly addressed through joinder.

23. There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether ABERCROMBIE's policies or practices discriminate against women employees and applicants; (2) whether ABERCROMBIE's policies and practices violate Title VII; (3) whether compensatory and punitive damages, injunctive relief, and other equitable remedies for the class are warranted.

24. The representative Plaintiffs' claims are typical of the claims of the class.

25. The representative Plaintiffs will fairly and adequately represent and

protect the interests of the members of the class. Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

26. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because ABERCROMBIE has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the class as a whole. The class members are entitled to injunctive relief to end ABERCROMBIE's common, uniform, and unfair sexually discriminatory personnel policies and practices.

27. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The class members have been damaged and are entitled to recovery as a result of ABERCROMBIE's common, uniform, and unfair sexually discriminatory personnel policies and practices. ABERCROMBIE has computerized payroll and personnel data that will make calculation of damages for specific class members relatively simple. The propriety and amount of punitive damages are issues common to the class.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

### ELIZABETH WEST

28. Plaintiff ELIZABETH WEST is a female resident of El Segundo, California. On or about September 1, 2003, she applied for a Brand Representative position at an ABERCROMBIE store in Redondo Beach, California. She was interviewed for the position along with two other female applicants and a male applicant. It was Ms. WEST's plan to initially work as a sales representative and ultimately advance to an ABERCROMBIE management position. Although Ms. WEST had extensive prior retail experience, she was denied employment in favor of a male. ABERCROMBIE has discriminated against Ms. WEST by denying her employment because of her gender.

29. On or about June 23, 2004, Ms. WEST filed class charges of gender

discrimination with the EEOC. Ms. WEST received a copy of her Notice of Right to Sue from the EEOC on November 3, 2004. This complaint is therefore timely filed.

**JENNIFER LU**

30. Plaintiff JENNIFER LU is a female student at the University of California at Irvine. She worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from September 2000 to February 2003. She was an experienced, knowledgeable, hardworking and dependable employee, entrusted with responsibilities that only the most trustworthy and more senior staff were given.

31. In or around January 2003, representatives from corporate and/or regional headquarters, including the regional president, visited the Crystal Court Mall store on an inspection tour, or "blitz." These headquarters/regional representatives reiterated to the Store Manager and other managers the importance of having a predominantly male workforce. Soon after this "blitz," on or about February 8, 2003, plaintiff LU and some four other women Brand Representatives were terminated and/or constructively discharged. These terminations and/or constructive discharges were not done for any legitimate business reason, such as poor work performance, but on the basis of gender. Assistant Manager James Morishita told Ms. LU that she and the other women had been terminated because the regional president had complained that there were "too many girls working there." The store hired several male Brand Representatives within weeks of firing Ms. LU and the other women employees.

32. On February 8, 2003, Ms. LU learned that she had been fired. She informed the Store Manager that she was willing to be flexible with shift assignments, and that if the staffing needs picked up in the summer months or other peak shopping seasons, she would like to be considered. General Manager Kyle Richter told her that she was not needed at that time nor would she be needed in the future.

33. ABERCROMBIE discriminated against Ms. LU on the basis of her gender by (a) terminating her employment because she is not male; and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

34. On or about April 22, 2003, Ms. LU filed a charge of discrimination with the EEOC. Ms. LU received a copy of her Notice of Right to Sue from the DFEH, dated April 29, 2003. On or about March 29, 2004, ABERCROMBIE and Ms. LU entered into a tolling agreement whereby they agreed that any statutes of limitations relating to Ms. LU's gender discrimination claims against ABERCROMBIE would be tolled, pending settlement discussions, until Ms. LU gave ABERCROMBIE written notice of her intent to file a complaint, which she has done. Thus, this Complaint is timely filed.

## GENERAL POLICIES OR PRACTICES OF DISCRIMINATION

35. The terminations and unjustified restrictions of employment experienced by the Representative Plaintiffs are part of a general policy or practice of discrimination on the basis of gender in employment that has existed at ABERCROMBIE since at least February 24, 1999. These are not isolated examples of employment practices or individual decisions. On the contrary, these incidents are representative of ABERCROMBIE's systematic discrimination against women and in favor of male applicants, employees and managers, to create a workforce which is disproportionately male despite the fact that women have historically represented far more than 50% of the national retail sales workforce.

36. The under-representation of women in retail store employees and management positions throughout ABERCROMBIE's approximately 700 stores in the United States results from an intentional policy and practice of discrimination on the basis of gender in recruitment, processing of job applications, hiring, initial job assignment, weekly hours allocation, internal job transfer, inter-store transfer, promotion and termination.

37. ABERCROMBIE has pursued policies or practices on a continuing basis that have denied or restricted job opportunities to qualified women applicants and employees.

38. Such discriminatory policies or practices include, without limitation:

    a. Reliance on subjective, arbitrary, standardless, and unvalidated criteria in making hiring decisions, focusing on whether applicants are male, rather than whether

they have relevant job experience and would be responsible, effective retail store employees who could perform their jobs well;

   b. Reliance on subjective, arbitrary, standardless, and unvalidated criteria in making decisions in job assignments, weekly hour allocations, and ability to transfer between stores focusing on whether employees are male, rather than whether they would be responsible, effective retail store employees who perform their jobs well;

   c. Assigning women applicants and Brand Representatives to stock room and overnight shift positions where they are out of the public eye;

   d. Targeting male candidates for recruitment, both systemically (e.g., targeting specific college fraternities for recruitment) and individually (e.g., inviting individual male customers in the store to apply to become Brand Representatives), but avoiding, ignoring, discouraging or dissuading equally qualified women from applying;

   e. Use of corporate "blitzes" to identify stores with "too many women" and to purge women retail store employees; and

   f. Terminating employees based on gender without regard to their performance on the job.

   g. Maintaining a numerical limitation on the number of females who could be hired for retail floor positions or be assigned to "greeter" (front door) duties.

   h. Denying women promotions to store management positions (e.g. assistant manager and store manager) and denying women opportunities to apply for positions in ABERCROMBIE's manager-in-training program.

<b><u>FIRST CAUSE OF ACTION</u></b>

<b><u>GENDER DISCRIMINATION IN EMPLOYMENT<br>(42 U.S.C. § 2000e <i>et seq.</i>)</u></b>

<b>(By Plaintiffs On Behalf Of Themselves And Of The Class)</b>

39. Plaintiffs incorporate paragraphs 1 through 38 as alleged above.

40. This Claim is brought on behalf of JENNIFER LU and ELIZABETH

WEST on behalf of themselves and the class they represent.

41. ABERCROMBIE has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, promotion and termination. The system has an adverse disparate impact on women applicants and employees. This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged business necessity.

42. ABERCROMBIE's discriminatory policies or practices described above have denied women applicants and employees employment, job assignments, job transfers, promotions to management positions and weekly hour allocations, resulting in the loss of past and future wages and other job benefits.

43. The foregoing conduct constitutes illegal, intentional discrimination in the form of unjustified disparate impact prohibited by 42 U.S.C. § 2000e, *et seq.*

44. Plaintiffs request relief as hereinafter provided.

## SECOND CAUSE OF ACTION

### GENDER DISCRIMINATION IN EMPLOYMENT
### Government Code § 12900, *et seq.*)

**(By Plaintiffs On Behalf Of Themselves And Of The Class)**

45. Plaintiffs incorporate paragraphs 1 through 44 as alleged above.

46. This claim is brought on behalf of JENNIFER LU, ELIZABETH WEST, and the subclass of California class members they represent.

47. ABERCROMBIE has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, promotion and termination. The system has an adverse disparate impact on women applicants and employees. This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged business necessity.

48. ABERCROMBIE's discriminatory policies or practices described above have denied women applicants and employees opportunities for employment, job assignments, job transfers, promotions to management positions and weekly hour allocations, resulting in the loss of past and future wages and other job benefits. ABERCROMBIE has also breached its affirmative duty to take all reasonable steps necessary to prevent employment discrimination from occurring.

49. The foregoing conduct constitutes illegal, intentional discrimination as unjustified disparate impact prohibited by Government Code section 12900, *et seq*.

50. Plaintiff JENNIFER LU has received her Right to Sue letter from the EEOC. Plaintiffs have therefore timely complied with all prerequisites to suit.

51. Plaintiffs request relief as hereinafter provided.

## ALLEGATIONS REGARDING RELIEF

52. Plaintiffs, and the class they seek to represent, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiffs, and the class they seek to represent, are now suffering and will continue to suffer irreparable injury from defendant's discriminatory acts and omissions.

53. ABERCROMBIE's actions have caused and continue to cause plaintiffs and all class members substantial losses in earnings, work experience, weekly hour allocations, and other employment benefits.

54. In addition, representative plaintiffs and the class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

55. ABERCROMBIE performed the acts herein alleged with malice, fraud, oppression and/or reckless indifference. Plaintiffs and class members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs and the class pray for relief as follows:

56. Certification of the case as a class action on behalf of the proposed class;

57. Designation of Representative Plaintiffs JENNIFER LU and ELIZABETH WEST as representatives of the class;

58. Designation of Representative Plaintiffs' counsel of record as class counsel;

59. A preliminary and permanent injunction against ABERCROMBIE and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

60. An order that ABERCROMBIE institute and carry out policies, practices, and programs that provide equal employment opportunities for all women, and that it eradicate the effects of its past and present unlawful employment practices;

61. An order reinstating or instating plaintiffs and class members to their rightful positions at ABERCROMBIE, or in lieu of reinstatements or instatements, an order for front pay benefits;

62. Back pay (including interest and benefits) for individual plaintiffs and class members;

63. All damages sustained as a result of ABERCROMBIE's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

64. Exemplary and punitive damages in an amount commensurate with ABERCROMBIE's ability to pay and deter future conduct;

65. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

66. Pre-judgment and post-judgment interest, as provided by law; and

67. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: November 8, 2004

Respectfully submitted,

MINAMI, LEW & TAMAKI LLP

By: _____
Jack W. Lee
Attorneys for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues for which they have a right to trial.

Dated: November 8, 2004

Respectfully submitted,

MINAMI, LEW & TAMAKI LLP

By: _____
Jack W. Lee
Attorneys for Plaintiffs