1   Bill Lann Lee (SBN 108452)
    Kelly M. Dermody (SBN 171716)
2   Eve H. Cervantez (SBN 164709)
    Elizabeth A. Alexander (pro hac vice)
3   Jahan C. Sagafi (SBN 224887)                    Douglas R. Young
    Nirej S. Sekhon (SBN 213358)                    Sandra A. Kearney
4   LIEFF, CABRASER, HEIMANN &                      FARELLA BRAUN & MARTEL, LLP
    BERNSTEIN, LLP                                  Russ Building, 30th Floor
5   275 Battery Street, 30th Floor                  235 Montgomery Street
    San Francisco, CA  94111-3339                   San Francisco, CA 94104
6   Telephone:  (415) 956-1000                      Telephone:  (415) 954-4400
    Facsimile:  (415) 956-1008                      Facsimile:  (415) 954-4481
7
    Thomas A. Saenz (SBN 159430)                    Thomas Brennan Ridgley
8   Shaheena Ahmad Simons (SBN 225520)              Jonathan M. Norman
    MEXICAN AMERICAN LEGAL DEFENSE                  Sandra J. Anderson
9   AND EDUCATIONAL FUND                            Mark A. Knueve
    634 South Spring Street                         VORYS, SATER, SEYMOUR & PEASE
10  Los Angeles, CA  90014                          LLP
    Telephone:  (213) 629-2512                      52 East Gay Street
11  Facsimile:  (213) 629-0266                      P.O. Box 1008
                                                    Columbus, OH 43216-1008
12  Joseph C. Kohn                                  Telephone: 614-464-6400
    Martin J. D'Urso                                Facsimile: 614-464-6350
13  Hilary Cohen
    KOHN, SWIFT & GRAF, P.C.                        Anna Y. Park (SBN 164242)
14  One South Broad Street, Suite 2100              Peter F. Laura (SBN 116426)
    Philadelphia, PA 19107                          U.S. EQUAL EMPLOYMENT
15  Telephone:  (215) 238-1700                      OPPORTUNITY COMMISSION
    Facsimile:  (215) 238-1968                      255 East Temple Street, 4th Floor
                                                    Los Angeles, CA 90012
16
    Jack W. Lee, Esq. (SBN 071626)
17  Lisa Duarte, Esq. (SBN 169750)                  John C. Hendrickson (IL SBN 1187589)
    John Ota, Esq. (SBN 195532)                     Gregory M. Gochanour (IL SBN 6210804)
18  MINAMI, LEW & TAMAKI LLP                        U.S. EQUAL EMPLOYMENT
    360 Post Street, 8th Floor                      OPPORTUNITY COMMISSION
19  San Francisco, CA 94108                         500 West Madison Street, Suite 2800
    Telephone:  (415) 788-9000                      Chicago, IL 60661
20  Facsimile:  Fax (415) 398-3887

21  *Attorneys for Plaintiffs and Defendants* [Additional counsel listed on signature page]

22                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
23

24  EDUARDO GONZALEZ, ANTHONY              Case Nos.  03-2817 SI, 04-4730 and
    OCAMPO, ENCARNACION GUTIERREZ,         04-4731
25  JOHAN MONTOYA, JUANCARLOS GÓMEZ-
    MONTEJANO, JENNIFER LU, AUSTIN CHU,
26  IVY NGUYEN, ANGELINE WU, ERIC FIGHT,   **CONSENT DECREE**
    CARLA GRUBB, DAVID CULPEPPER,
27  PATRICE DOUGLASS, and ROBAIR
    SHERROD, BRANDY HAWK and ANDRE
28

STEELE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ABERCROMBIE & FITCH STORES, INC., A&F CALIFORNIA, LLC, A&F OHIO, INC., and ABERCROMBIE & FITCH MANAGEMENT CO.,

Defendants.

ELIZABETH WEST and JENNIFER LU,

Plaintiffs,

v.

ABERCROMBIE & FITCH STORES, INC., A&F CALIFORNIA, LLC, A&F OHIO, INC., and ABERCROMBIE & FITCH MANAGEMENT CO.,

Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

v.

ABERCROMBIE & FITCH STORES, INC., A&F CALIFORNIA, LLC, A&F OHIO, INC., and ABERCROMBIE & FITCH MANAGEMENT CO.

Defendants.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. PURPOSES OF THE CONSENT DECREE...........................................................1

III. DEFINITIONS.......................................................................................................2

IV. LITIGATION BACKGROUND ............................................................................4

    A. The Gonzalez Litigation................................................................................4

    B. The EEOC Litigation....................................................................................6

    C. The West Litigation ......................................................................................7

V. JURISDICTION......................................................................................................8

VI. EFFECTIVE DATES AND DURATION OF THE DECREE...............................8

VII. SETTLEMENT CLASS .......................................................................................9

VIII. RELEASE OF CLAIMS IN PRIVATE ACTIONS AND EEOC ACTION ...................10

    A. Release of Claims by Settlement Class........................................................10

    B. Release of Claims by Plaintiffs ...................................................................11

    C. Unknown Claims .........................................................................................12

    D. EEOC Release..............................................................................................12

    E. No Tolling of Harassment Claims ...............................................................13

    F. No Bar to Future Claims ..............................................................................13

IX. MISCELLANEOUS PROVISIONS......................................................................13

    A. No Admission of Liability ...........................................................................13

    B. Modification and Severability of the Consent Decree .................................14

    C. Duty to Support and Defend the Decree ......................................................15

    D. Execution In Counterparts ...........................................................................15

X. GENERAL EQUITABLE PROVISIONS..............................................................15

    A. General Injunctive Provisions ......................................................................15

    B. Dispute Resolution and Enforcement Procedures........................................16

    C. Marketing ....................................................................................................19

XI. ABERCROMBIE'S INTERNAL PROCEDURES FOR IMPLEMENTING EQUAL EMPLOYMENT AND DIVERSITY PRACTICES ...........................................20

    A. Creation of Office of Diversity....................................................................20

    B. Notice and Posting ......................................................................................22

    C. EEO and Diversity Training ........................................................................23

    D. Internal Complaint Procedure .....................................................................25

    E. Performance Evaluations .............................................................................28

XII. JOB ANALYSIS, MINIMUM ELIGIBILITY REQUIREMENTS, JOB CRITERIA, RECRUITMENT, HIRING, JOB ASSIGNMENTS AND MANAGERIAL PROMOTION AND STAFFING ........................................................28

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3
    A.    Job Analysis and Job Criteria .......................................................28

    B.    Recruitment and Hiring..............................................................29

    C.    Managerial Promotions ..............................................................31

XIII.  AFFIRMATIVE RECRUITING EFFORTS .............................................31

    A.    Diversity Recruiters ...................................................................31

    B.    Advertisements..........................................................................32

    C.    Recruiting Events .......................................................................32

    D.    Diversity Consultant ..................................................................32

    E.    Documentation..........................................................................32

XIV.  BENCHMARKS...................................................................................33

    A.    General Principles .....................................................................33

    B.    Interim Hiring Goals .................................................................34

    C.    Applicant Rate Goals .................................................................38

XV.  REPORTING, RECORDKEEPING, AND COMPLIANCE MEETINGS ......39

    A.    Documents To Be Preserved For The Duration of The Decree ...........39

    B.    Documents to Be Maintained for Two Years ........................................39

    C.    Access to Documents..................................................................39

    D.    Reporting Schedule ...................................................................40

    E.    Contents of the Semi-Annual Progress Reports..................................40

    F.    Compliance Meetings ................................................................42

    G.    Status Conference with Court .....................................................43

XVI.  MONITORING OF IMPLEMENTATION...............................................43

    A.    Court-Appointed Monitor ..........................................................43

XVII.  MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE ...................47

    A.    Establishment of Settlement Fund ...............................................47

    B.    Distribution of Settlement Fund ..................................................49

        1.    Class Representatives and EEOC Charging Parties..................49

        2.    Settlement Class ................................................................49

    C.    Notice ......................................................................................49

        1.    Mailed Notice...................................................................49

        2.    Published Notice ...............................................................50

    D.    Objections and Exclusions ..........................................................50

        1.    Objections .......................................................................50

        2.    Exclusions .......................................................................51

        3.    Rescission of Class Member Opt-Outs ..................................51

**TABLE OF CONTENTS**
**(continued)**

Page

4.     Opt-Out Credits..................................................................52

5.     Defendant's Rescission of Agreement ......................................52

E.     Claims Administration.............................................................53

F.     Submission of Claim Forms......................................................53

G.     Deceased Claimants ...............................................................54

H.     Determining Eligibility ...........................................................54

I.     Late-Filed Claims..................................................................55

J.     Appeals of Claims Eligibility....................................................55

K.     Claimant Information Provided by Abercrombie .................................55

L.     Allocation Plan.....................................................................56

M.     Distribution of the Monetary Awards ...........................................56

N.     Allocation of Monetary Awards .................................................57

O.     Cy Pres Fund .......................................................................57

P.     Report from Claims Administrator ..............................................58

XVIII.   ATTORNEYS' FEES, COSTS AND EXPENSES ......................................58

A.     Basis for Award of Fees, Costs and Expenses ................................58

B.     Payment of Award .................................................................59

I. **INTRODUCTION**

This Consent Decree ("Decree") has been voluntarily entered into by the parties for the purpose of finally resolving the litigation between them.

This Consent Decree includes a joint statement of the purposes of the Decree, a description of the history of the litigation, and various substantive provisions agreed upon by the parties. As a result of negotiations supervised by a mediator, the parties have reached a voluntary agreement that is contained in this Decree.

II. **PURPOSES OF THE CONSENT DECREE**

The parties have entered into this Consent Decree for the following purposes:

A. To resolve all disputes covered by this Consent Decree in such a way as to avoid further expensive and protracted litigation.

B. To ensure equal employment opportunity for African Americans, Asian Americans, Latinos, and women applying to, and working within, stores operated by defendants.

C. To ensure equal employment opportunity for African American women, Latino women and Asian American women applying to, and working within, stores operated by defendants.

D. To provide for the implementation of recruitment, selection and personnel systems that will ensure that African Americans, Asian Americans, Latinos and women are considered for recruitment, hire, job assignment and managerial promotion for which they are interested and qualified on a non-discriminatory basis.

E. To provide for implementation of recruitment, selection and personnel systems that will ensure that African American women, Latino women, and Asian American women are considered for recruitment, hire, job assignment and managerial promotion for which they are interested and qualified on a non-discriminatory basis.

F. To create an expedited and efficient procedure for implementing equitable relief pursuant to the terms of this Decree; and

G. To provide finality to the resolution of all claims and defenses asserted in these civil actions.

### III.   **DEFINITIONS**

A.   "Abercrombie" or the "Company" means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc.; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them.  The terms of this Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie.

B.   "Adverse impact" shall be defined in a manner consistent with Title VII law.

C.   "African American" means all persons having origins in any of the black racial groups of Africa.

D.   "Approval Date" means the date upon which the Court signs this Decree, having determined that it is fair, adequate and reasonable after:  (i) notice to the Settlement Class; (ii) opportunity to opt out of the Settlement Class with respect to monetary relief; (iii) opportunity to submit timely objection to the Decree; (iv) appropriate discovery of the specifics of any such timely objections; and (v) a hearing on the fairness of the settlement.

E.   "Asian American" means all persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent, or the Pacific Islands.  This area includes, but is not limited to, China, India, Japan, Korea, the Philippine Islands, and Samoa.

F.   "Associates" means all in-store hourly or managerial employees.

G.   "Benchmark Positions" means Brand Representative and Manager-in-Training positions.

H.   "Best Efforts" means implementing and adequately funding a plan reasonably designed to comply with all the specific objectives to which the best efforts are directed.

I.   "Charging Party" means Lekisha Bondurant, Torrey Dickson, Stanley Elmore, Timothy Greer, Eric Jason and Jason Noel.

J.   "Class Counsel" means all counsel of record for the Class Representatives in the Private Civil Actions.

K.    "Class Representatives" or "Plaintiffs" means Eduardo Gonzalez, Anthony Ocampo, Encarnacion Gutierrez, Brandy Hawk, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, Robair Sherrod, Andre Steele, and Elizabeth West.

L.    "Consolidated Litigation" means the Private Civil Actions and the EEOC Civil Action that the parties stipulate they will move, or have already moved, to consolidate before Judge Susan Illston for purposes of approval and oversight of this settlement.

M.    "Court" means the United States District Court for the Northern District of California.

N.    "EEOC Civil Action" means *EEOC v. Abercrombie & Fitch Stores, Inc.*, N.D. Cal. Case No. 04-4731.

O.    "Final Approval" means the entry of this Decree on the Approval Date by the United States District Court for the Northern District of California, and either:  (1) the expiration of the time for filing of a direct appeal from the Court's approval of the Decree without the filing of a notice of appeal, or (2) if a timely direct appeal is filed, the final resolution of the appeal (including any requests for rehearing and/or petitions for a writ of certiorari), resulting in final judicial approval of the Consent Decree.

P.    "Good Faith Offer" means an offer of employment -- under the same terms and conditions of employment (e.g., hours, shifts or locations offered) offered to similarly situated individuals who receive employment offers -- that is made to an individual who has submitted a written or electronic application for a job.

Q.    "Latino" means all persons of Mexican, Puerto Rican, Cuban, Central American, South American or other Spanish culture or origin, regardless of race.

R.    "Lead Counsel" means Lieff, Cabraser, Heimann & Bernstein, LLP; the Mexican American Legal Defense and Educational Fund (MALDEF); and Kohn, Swift & Graf representing the *Gonzalez* Minority class; and Minami, Lew & Tamaki representing the *West* gender class.

S.    "Minority" means all African Americans, Asian Americans, and Latinos. "Minority Group" means each of these three groups.

T.    "Minority Women" means African American females, Latina females, and Asian American females.

U.    "Preliminary Approval Date" means the date upon which the Court enters an Order preliminarily approving this Decree, pending notice (an opportunity to opt out of the notice), an opportunity to opt out of the Settlement Class or submit objections to the Decree, and a fairness hearing thereon.

V.    "Private Civil Actions" means *Gonzalez v. Abercrombie & Fitch Stores, Inc.*, N.D. Cal. Case No. 03-2817-SI and *West v. Abercrombie & Fitch Stores, Inc.*, N.D. Cal. Case No. 04-4730.

W.    "Release" means the Release of Claims set forth in Section VIII of the Decree.

X.    "Settlement Class" means those persons described in Section VII of the Decree. "Settlement Class Members" means each and every person described in Section VII of the Decree.

Y.    "Term of the Decree," "Period of the Decree" or "Duration of the Decree" is the period from the Approval Date until the expiration of the Decree under Section VI.

## IV.    LITIGATION BACKGROUND

### A.    The *Gonzalez* Litigation

On June 16, 2003, Plaintiffs filed the *Gonzalez* case in the Northern District of California, alleging violations of 42 U.S.C. § 1981 and the California Fair Employment and Housing Act, and providing notice of Plaintiffs' intent to bring claims under Title VII of the Civil Rights Act of 1964. The Complaint was brought on behalf of a putative class of minority individuals who alleged that Defendants discriminate against minorities on the basis of race, color, and/or national origin, with respect to hiring, firing, job assignment, compensation and other terms and conditions of employment, by enforcing a nationwide corporate policy of preferring white employees for sales positions, desirable job assignments, and favorable work schedules in its stores throughout the United States.

1   Plaintiffs filed the First Amended Complaint on August 18, 2003, which alleged

2   substantially the same facts and legal claims.  This complaint added three named plaintiffs and

3   three defendants, Abercrombie & Fitch Stores, Inc., A&F California, LLC, and A&F Ohio, Inc.

4   On September 11, 2003, Defendants answered the First Amended Complaint, denying Plaintiffs'

5   allegations.

6   On January 9, 2004, Plaintiffs filed the Second Amended Complaint, which again alleged

7   substantially the same facts and legal claims, this time converting the notice of intent to file Title

8   VII claims into actual Title VII claims.  This complaint added two named plaintiffs and removed

9   one defendant, Abercrombie & Fitch Co.  This complaint also included as exhibits Right-to-Sue

10  letters from the EEOC issued to 13 of the 14 named plaintiffs who brought Title VII and FEHA

11  claims.  Defendants answered the Second Amended Complaint, denying Plaintiffs' allegations, on

12  January 26, 2004.

13  Plaintiffs filed the Third Amended Complaint on June 10, 2004, which again alleged

14  substantially the same facts and legal claims.  This complaint added individual causes of action

15  for gender discrimination, brought only on behalf of named plaintiffs Ivy Nguyen and Angeline

16  Wu.  On June 21, 2004, Defendants answered the Third Amended Complaint, denying Plaintiffs'

17  allegations.

18  On November 8, 2004, Plaintiffs filed the Fourth Amended Complaint naming two

19  additional Plaintiffs and an additional defendant, Abercrombie & Fitch Management Co., as well

20  as adding claims of discrimination in hiring of Managers-in-Training positions and promotion to

21  in-store managerial positions.

22  On October 10, 2003, Plaintiffs served their first set of requests for discovery.  On

23  February 19, 2004, Plaintiffs served their second set of requests for discovery.  Defendants

24  responded by producing roughly 17,000 pages of documents, as well as files from Abercrombie's

25  computerized personnel databases.

26  Defendants served their first set of requests for discovery in November 2003 and took the

27  depositions of seven class representatives in February 2004.  Plaintiffs took six days of

28  depositions of Abercrombie officials and managers under Fed. R. Civ. P. 30(b)(6) in March 2004.

1  Plaintiffs and Defendants have obtained numerous declarations from putative class members and

2  witnesses, including managers, concerning alleged discrimination, or lack of discrimination, that

3  they would testify to if called.

4       On April 13, 2004, and on several dates subsequently, the parties conducted mediation

5  discussions in an attempt to resolve the Consolidated Litigation.  These discussions have

6  culminated in this settlement agreement.

7       **B.     The EEOC Litigation**

8       Between December 21, 1999 and January 29, 2004, the EEOC received charges of

9  discrimination alleging discrimination in hiring, assignment, layoff, constructive discharge,

10 discharge, terms and conditions of employment, and failure to promote into manager positions

11 due to race, national origin, and/or gender.

12      Specifically, on or about December 21, 1999, a charging party filed an individual charge

13 alleging national origin discrimination and wrongful termination.  The charge was later amended

14 on or about March 21, 2001 alleging that the charging party was not hired into a sales position or

15 a Brand Representative position due to his national origin.  Class allegations were included,

16 alleging that Abercrombie failed to recruit, hire, and assign Latinos into Brand Representative

17 positions and that Latinos were terminated due to their national origin.

18      On or about September 13, 2001, the EEOC issued a Letter of Determination finding

19 probable cause that the charging party was denied a permanent sales or Brand Representative

20 position, denied assignments, and terminated due to his national origin.  The EEOC also found

21 probable cause that Latinos and African Americans as a class were not recruited, hired, or

22 assigned permanent positions or given assignments due to their race and national origin.  The

23 Commission further found probable cause that Abercrombie failed to maintain records as required

24 by federal law.

25      EEOC received additional charges against Abercrombie nationwide and issued additional

26 Letters of Determination on or about September 30, 2004 and November 1, 2004 finding probable

27 cause that Abercrombie violated Title VII by discriminating against minority individuals on the

28 basis of national origin, color, race, and/or gender (female including minority women) in hiring,

staffing, constructive discharge, failing to promote into manager positions, steering, and discharge, on an individual basis and also on a nationwide class basis. The EEOC also found probable cause that Abercrombie violated Title VII by discriminating against a class of individuals nationwide by deterring minority applicants from applying for sales, stock, overnight, manager-in-training, and manager positions because of their race, color, and/or national origin; failing or refusing to recruit minority and female applicants for sales, stock, overnight, manager-in-training, and manager positions because of their race, color, and/or national origin; failing and refusing to hire and to assign minorities and females into sales, stock, overnight, manager-in training, and manager positions because of their race, color, national origin and/or gender; failing and refusing to promote minorities and females into manager-in-training and manager positions because of their race, color, national origin, and/or gender; terminating minority and female employees because of their race, color, national origin, and/or sex; and segregating its workforce on the basis of race, color, national origin, and/or gender. The EEOC again found probable cause that Abercrombie failed to maintain records as required by federal law.

After meeting all the conditions precedent, the EEOC filed a federal lawsuit in the matter of *EEOC v. Abercrombie and Fitch Stores, Inc.*, N.D. Cal., Case No. 04-4731, on November 8, 2004 ("EEOC Litigation") encompassing all the claims set forth in the Letters of Determination as described above. The EEOC's pre-filing investigation involved analysis of hard copy documents, statistical compilations and computer-readable files, and investigative interviews of employees and company officials.

### C. The *West* Litigation

Counsel for the gender class became involved in this case in February 2004 after being contacted by one of the named plaintiffs in *Gonzalez v. Abercrombie & Fitch*. This named plaintiff sought separate counsel to file a gender class action against Abercrombie.

Putative counsel for the gender class thereafter conducted an independent, on-going investigation to determine the merits of a possible class gender discrimination claim against Abercrombie. Counsel for the gender class contacted scores of class members and witnesses, collected declarations from many class members regarding their experiences at Abercrombie,

1 reviewed statistical reports produced in the course of the *Gonzalez* litigation and conducted a

2 separate analysis of the workforce by gender.

3 After informing defendant of its intent to file a gender complaint, counsel for the gender

4 class was invited to participate in the initial April 2004 mediation sessions with the *Gonzales*

5 parties and EEOC in an effort to resolve this case without further litigation.

6 During the mediation, which lasted over fifteen days over the course of eight months, all

7 parties engaged in extensive discussions regarding the merits of the race and gender claims, relief

8 for class members, and procedures to be put into place to ensure equal employment opportunity

9 for minorities and women in the future.

10 The gender class action, *West v. Abercrombie & Fitch Stores, Inc.*, N.D. Cal., Case No.

11 04-4730 was filed on November 8, 2004.

12 **V.     JURISDICTION**

13 The Court has jurisdiction over the parties and subject matter of the Private Civil Actions

14 and EEOC Civil Action. The parties agree that they will seek, or have already sought

15 consolidation of the Private Civil Actions and the EEOC Civil Action before Judge Susan Illston

16 for purposes of approval of this settlement. If the claims asserted in the complaints filed in these

17 civil actions were proven, the Court would have the authority to grant the equitable and monetary

18 relief set forth in this Consent Decree. Venue is proper in this District. This Court shall retain

19 jurisdiction of these civil actions during the duration of the Decree solely for the purposes of

20 entering all orders, authorized hereunder, that may be necessary to implement the relief provided.

21 **VI.     EFFECTIVE DATES AND DURATION OF THE DECREE**

22 A.     Unless provided otherwise, the equitable provisions in this Decree are effective

23 immediately upon the Approval Date.

24 B.     The provisions of this Decree shall remain in effect for a period of six years (72

25 months). Abercrombie may file a motion to be relieved of the provisions of the decree at any

26 point following the expiration of 54 months from the effective date of the decree. The parties

27 may stipulate that Abercrombie should be relieved of the provisions of the Decree. Absent such

subject to Court approval

28 agreement, in order to be relieved of the provisions of the Decree before the full period of 72

months, Abercrombie must demonstrate that: 1) it has satisfied its duty to use Best Efforts with respect to its obligations under the Decree; 2) it has implemented and maintained all programs mandated by the Decree; 3) it has satisfied, without use of standard deviations, each of the benchmarks established by the Decree during the preceding 24 months; and 4) it has satisfied all monetary provisions of the Decree. Abercrombie bears the burden of demonstrating its satisfaction of these conditions to the Court. Lead Counsel and EEOC may oppose any motion to be relieved on grounds that any of these conditions have not been met and on the grounds set forth in Section X.C.1.b. Unless and until the court issues an order granting the motion to be relieved, all provisions of the Decree shall remain in full force and effect.

C. Abercrombie shall provide 30 days notice to the Special Master, Lead Counsel, and EEOC of any motion to be relieved of the provisions of the decree before the full period of 72 months. Abercrombie shall then provide its briefing and other support for its motion to the Special Master, Lead Counsel, and EEOC. Lead Counsel and the EEOC shall have 30 days to provide any opposition to the motion to the Special Master and Abercrombie. Abercrombie shall have 15 days to provide any reply materials to the Special Master, Lead Counsel, and EEOC. The Special Master shall then have 30 days to prepare a written recommendation to the court as to the resolution of the motion to be relieved. The parties shall then jointly file with the court all of the briefing and the Special Master's recommendation, and set a hearing for 28 days from the filing. Each party may file and serve a response to the Special Master's recommendation, not to exceed ten pages, not later than 14 days before the scheduled hearing.

**VII. <u>SETTLEMENT CLASS</u>**

A. For purposes of the monetary relief provided in this Decree, the Settlement Class is certified under Federal Rule of Civil Procedure 23(b)(3) and consists of:

1. All Minority and/or female applicants who applied for employment as Associates in Abercrombie stores, or attempted to apply and were discouraged from applying for employment, between February 24, 1999 and the Preliminary Approval Date and who were not hired, except those who file a timely request to opt out of the monetary relief provisions.

2.      All Minority and/or female Associates of Abercrombie who are or were employed in an Abercrombie store, for any length of time, between February 24, 1999, and the Preliminary Approval Date, except those who file a timely request to opt out of the monetary relief provisions.

B.      For purposes of the equitable and declaratory relief provided in this Decree, the Settlement Class is certified under Federal Rule of Civil Procedure 23(b)(2) and consists of:

1.      All Minority and/or female applicants who applied for employment as Associates in Abercrombie stores, or attempted to apply and were discouraged from applying for employment, between February 24, 1999 and the Preliminary Approval Date and who were not hired.

2.      All Minority and/or female Associates of Abercrombie who are or were employed in an Abercrombie store, for any length of time, between February 24, 1999, and the Preliminary Approval Date.

C.      Settlement Class Members who have filed a timely request to opt out of the monetary relief provisions shall not be held to release any claims for individual relief.

D.      In the event that Final Approval is not obtained, nothing in this Decree shall be deemed to waive Abercrombie's objections and defenses to class certification, liability, or entitlement to monetary or equitable relief, or any other issue in the Consolidated Litigation, the Private Civil Actions, or the EEOC Civil Action, and this Decree shall then be deemed null and void and not admissible in any court regarding the propriety of class certification, liability, or entitlement to monetary or equitable relief, or any other issue in the Consolidated Litigation, the Private Civil Actions, or the EEOC Civil Action.

**VIII.   RELEASE OF CLAIMS IN PRIVATE ACTIONS AND EEOC ACTION**

**A.      Release of Claims by Settlement Class.**

Upon Final Approval of the Decree, Abercrombie and its employees, managers, insurers and attorneys shall be fully released and forever discharged from any and all individual and/or class-wide claims, demands, charges, complaints, rights and causes of action of any kind, known or unknown, by the Class Representatives, Plaintiffs, Charging Parties, the Settlement Class, each

member of the Settlement Class (hereafter "Releasers"), and by the Releasers' estates, whether

seeking monetary and/or equitable relief of any sort, which arise out of conduct within the

liability period of February 24, 1999 through the Preliminary Approval Date constituting alleged

race, color, national origin or gender discrimination in recruitment, the application process

(including claims of individuals who attempted to apply for and were discouraged from applying

for employment), hiring, job channeling or assignment, termination of employment, any terms

and conditions of employment that were or could have been raised in the Consolidated Litigation

and/or managerial promotion under Title VII, 42 U.S.C. Section 1981, the California FEHA or

any other federal, state, or local law prohibiting race, color, national origin or gender

discrimination, whether statutory, regulatory, pursuant to local ordinance, or at common law,

excepting solely claims of Class members other than Plaintiffs and Charging Parties for alleged

harassment (including constructive discharge allegedly caused by such harassment).  This Release

is final and shall survive expiration of the Decree's terms.

### B.    Release of Claims by Plaintiffs.

Upon Final Approval of the Decree, for and in consideration of the mutual promises,

terms and conditions by and between Plaintiffs and Charging Parties, and Defendants set forth

herein, the sufficiency of which consideration is expressly acknowledged, the Plaintiffs and

Charging Parties do hereby fully, finally and forever release and discharge Abercrombie and its

employees, managers, insurers and attorneys from any and all past and/or present claims,

demands, actions, causes of action, suits, damages, liabilities, assessments, judgments, costs,

losses, debts, obligations and expenses, of any and every nature whatsoever, whether or not

known, that they have had, now have, or may have from the beginning of time to the Preliminary

Approval Date, including without limitation those arising in any way out of the alleged facts,

circumstances and occurrences underlying those allegations of violations of Title VII, Section

1981 and the California FEHA that were asserted or that might have been asserted by or on behalf

of the Plaintiffs against Defendants either in Plaintiffs' complaints in the *Gonzalez* and *West*

actions, or in any and all charges of discrimination filed against Abercrombie by some or all of

the Plaintiffs and Charging Parties with the EEOC and/or DFEH.  This Release does not include

1  workers' compensation claims, if any, of the Plaintiffs or Charging Parties. This Release is final

2  and shall survive the expiration of the Term of the Decree. Prior to receiving any monetary relief

3  under this Decree, including any enhanced or service payment, each Plaintiff and Charging Party

4  will be required to execute a full and final general release of all claims against Abercrombie,

5  whether or not asserted in the Consolidated Litigation, in the form attached as Exhibit A.

6  **C.    Unknown Claims.**

7  Plaintiffs and Charging Parties acknowledge that they may not now know fully the

8  number or magnitude of the claims they may have, and that they may suffer some further loss or

9  damage in some way connected with the subject matter of the Consolidated Litigation, but which

10  is unknown or unanticipated at this time. Plaintiffs and Charging Parties have taken these risks

11  and possibilities into account and accept that, nevertheless, this Consent Decree covers all claims

12  arising out of or related to the subject matter of the Consolidated Litigation, which, although

13  unknown at the time of the execution of this Consent Decree, may be discovered later. Plaintiffs

14  and Charging Parties understand and assume these risks and expressly waive the provisions of

15  California Civil Code § 1542, or any comparable federal or other state statute, which states:

16
> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
17 WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE
18 RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
> MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
19 DEBTOR.

20  Plaintiffs and Charging Parties expressly waive any right to assert hereafter that any claim was

21  excluded from this Consent Decree through ignorance, oversight, or error. It is expressly

22  understood and agreed that this waiver of Civil Code § 1542 and the release and waiver set forth

23  in this Consent Decree are material terms of the agreement and were separately negotiated

24  between the parties. This Section VIII.C. does not waive any rights of Settlement Class members

25  other than Plaintiffs and Charging Parties.

26  **D.    EEOC Release.**

27  Upon Final Approval, this Decree shall fully and finally resolve any and all claims,

28  demands, charges, complaints, rights and causes of action of any kind, known or unknown,

asserted by EEOC in its Complaint arising from incidents occurring prior to the Preliminary

Approval Date.  It is the intention of Abercrombie and the EEOC that this release terminates all

investigations relating to claims of Settlement Class Members which were asserted by EEOC in

its Complaint.  This Release shall survive the termination of this Decree.

### E.    No Tolling of Harassment Claims.

Any claims of Settlement Class Members (other than the Plaintiffs) for alleged harassment

based upon race, color, national origin or gender (including constructive discharge allegedly

caused by such harassment), or for the alleged retaliation for opposing or complaining about such

purported harassment, are not released hereunder because such claims are not and have never

been asserted on a class-wide basis as a part of the Private Civil Actions or the EEOC Civil

Action.  Hence, there also has been no tolling of the statute of limitations for asserting any such

claims against Abercrombie and its employees, managers, insurers and attorneys by operation of

these civil actions or any of the Plaintiffs' individual EEOC or DFEH charges.

### F.    No Bar to Future Claims.

Nothing in the Decree shall be construed to bar any claims of members of the Settlement

Class or Plaintiffs that arise after the Preliminary Approval Date.

## IX.    MISCELLANEOUS PROVISIONS

### A.    No Admission of Liability.

This Consent Decree does not constitute and shall not be deemed to be a finding or

determination by the Court, nor an admission by any party, regarding the merits, validity or

accuracy of any of the allegations, claims or defenses.  This Decree represents the compromise of

disputed claims that the parties recognize would require protracted and costly litigation to

determine.  Abercrombie denies that it has engaged in any policy or pattern or practice of

unlawful discrimination, or that it has engaged in any other unlawful conduct as alleged in the

Consolidated Litigation, and Abercrombie's entry into this Decree is not and may not be used by

any person in any proceeding as an admission or evidence that Abercrombie and/or its employees,

managers, and/or attorneys have on any occasion engaged in discriminatory employment

practices or any other unlawful conduct, such being expressly denied.  Abercrombie has

1  voluntarily entered into this Decree because it believes the actions it has agreed to undertake

2  demonstrate its strong commitment to diversity and equal employment opportunity.  Neither the

3  Decree nor any compliance reports, filings, data, or other compliance information arising out of

4  or related to the Decree shall be discoverable, admissible or used as evidence of liability or non-

5  liability for unlawful discrimination in any proceeding other than one relating to the enforcement

6  of this Decree.

7                    **B.**        **Modification and Severability of the Consent Decree.**

8                    1.        Whenever possible, each provision and term of this Decree shall be

9  interpreted in such a manner as to be valid and enforceable; provided, however, that in the event

10  that after Final Approval hereof any provision or term of this Decree should be determined to be

11  or rendered unenforceable on collateral review, all other provisions and terms of this Decree and

12  the application thereof to all persons and circumstances subject thereto shall remain unaffected to

13  the extent permitted by law.  If any application of any provisions or term of this Decree to any

14  specific person or circumstance should be determined to be invalid or unenforceable, the

15  application of such provision or term to other persons or circumstances shall remain unaffected to

16  the extent permitted by law.

17                    2.        Lead Counsel, Abercrombie and the EEOC may jointly agree in writing to

18  modify the Decree.  In the event that changed or other circumstances make a modification of the

19  Decree necessary to ensure its purposes are fully effectuated, but good faith negotiations seeking

20  such modifications are unsuccessful, any party to the Decree shall have the right to move the

21  Court to modify this Decree.  Such motion shall be granted only upon the movant proving to the

22  Court by clear and convincing evidence that changed or other circumstances make such

23  modification necessary.  In determining the specific modification to order, the Court shall

24  consider whether there is an equally effective modification that would not materially increase the

25  burden of compliance and/or cost to Abercrombie of compliance (out-of-pocket or otherwise).

26  Any such modification to this Decree by the Court shall be ordered in such a fashion as will limit

27  the burden of compliance and/or the cost to Abercrombie (out-of-pocket or otherwise) to the

28  extent possible consistent with effectuating the purposes of this Decree.  The procedures for

negotiations to modify this Decree (and, if necessary, for resolution of disputes) shall be the same as those set forth in Section X.B, regarding Decree enforcement.

**C.**     **Duty to Support and Defend the Decree.**

Class Representatives, Class Counsel, EEOC and Abercrombie each agree to abide by all of the terms of this Decree in good faith and to support it fully, and shall use Best Efforts to defend this Decree from any legal challenge, whether by appeal or collateral attack.

**D.**     **Execution In Counterparts**

The parties agree that the Decree may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be part of the same Decree.

**X.**     **GENERAL EQUITABLE PROVISIONS**

**A.**     **General Injunctive Provisions.**

    1.     Abercrombie is hereby enjoined from enacting, maintaining or implementing any policy or engaging in any practice or procedure that discriminates against African Americans, Asian Americans, or Latinos on the basis of race, color and/or national origin.

    2.     Abercrombie is hereby enjoined from enacting, maintaining or implementing any policy or engaging in any practice or procedure that discriminates against women on the basis of gender.

    3.     Abercrombie is hereby enjoined from enacting, maintaining or implementing any policy or engaging in any practice, conduct or procedure that retaliates or has the purpose of retaliating against any future, current or former employee or applicant of Abercrombie because he or she opposed discrimination on the basis of race, color, national origin or gender; filed a charge of discrimination on the basis of race, color, national origin or gender; testified, furnished information or participated in any manner in any investigation, proceeding, or hearing in connection with any charge or complaint of discrimination on the basis of race, color, national origin or gender; testified, furnished information or participated in any manner in connection with the monitoring or implementation of this Decree; or sought and/or received any monetary and/or non-monetary relief pursuant to this Consent Decree.

1    4.    Abercrombie will implement or maintain non-discrimination and non-

2   harassment policies and an internal complaint procedure designed to assure equal employment

3   opportunity.

4    5.    Abercrombie will make available to Minority and female associates and

5   applicants the same employment opportunities and terms and conditions of employment,

6   including but not limited to recruitment, hiring, job assignments, and managerial promotions, as

7   Abercrombie affords similarly-situated white male employees.

8    **B.    Dispute Resolution and Enforcement Procedures.**

9    1.    The parties agree to the appointment of Hunter Hughes as Special Master.

10  The Special Master may be removed at the joint written request of Lead Counsel, EEOC, and

11  Abercrombie, or by order of the Court upon motion of any party and a showing of good cause that

12  Mr. Hughes should no longer serve as Special Master.  In the event that Mr. Hughes becomes

13  unavailable to serve as Special Master for any reason, Lead Counsel, EEOC and Abercrombie

14  will make a good faith effort to select on a joint basis a new Special Master.  If Lead Counsel,

15  EEOC and Abercrombie are unable to reach agreement as to a successor Special Master within

16  forty-five (45) days following the date Mr. Hughes becomes unavailable to serve as Special

17  Master, the Court shall appoint a successor Special Master upon motion of Lead Counsel, EEOC

18  or Abercrombie.  Lead Counsel, EEOC or Abercrombie may nominate to the Court persons for

19  consideration as a successor Special Master.  Lead Counsel, EEOC and Abercrombie shall each

20  have the right to interview any nominated person, and to present argument and evidence to the

21  Court regarding the selection of the successor Special Master.

22   2.    The Special Master shall have authority to resolve all disputes arising

23  under the Decree, subject to limitations and standards set forth in the Decree.

24   3.    At the request of Lead Counsel, EEOC or Abercrombie, the parties shall

25  use Best Efforts to resolve promptly any differences or any disputes regarding the interpretation

26  or implementation of the Consent Decree.

27

28

4.     Lead Counsel, EEOC or Abercrombie shall have the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Decree subject to limitations and standards set forth in the Decree.

a.     If Lead Counsel, EEOC or Abercrombie has good reason to believe that a legitimate dispute exists, the initiating party shall first promptly give written notice to the other parties, including: (a) a reference to all specific provisions of the Decree that are involved; (b) a statement of the issue; (c) a statement of the remedial action sought by the initiating party; and (d) a brief statement of the specific facts, circumstances and any other arguments supporting the position of the initiating party;

b.     Within thirty (30) days after receiving such notice, the non-initiating party shall respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position, including the facts and arguments upon which it relies in support of its position;

c.     Lead Counsel, EEOC and Abercrombie shall undertake good-faith negotiations, including meeting or conferring by telephone or in person and exchanging relevant documents and/or other information, to attempt to resolve the issues in dispute or alleged noncompliance;

d.     The Special Master, upon motion, may permit Lead Counsel, EEOC or Abercrombie to take post-settlement discovery as provided by the Federal Rules of Civil Procedure, but only as to matters relevant to the underlying claim of breach, if the Special Master determines that the informal exchange of documents or information has not been sufficient to allow Lead Counsel, EEOC or Abercrombie to present the dispute upon a factual record adequate for a fair determination of the issue;

e.     If the parties' good-faith efforts to resolve the matter have failed, and after written notice of an impasse by the moving party to the non-initiating party or parties, Lead Counsel, EEOC or Abercrombie may file a motion with the Special Master, with a supporting brief, requesting resolution of the dispute or the issues of non-compliance, provided,

1  however, that such motion shall be limited to the dispute(s) and/or issue(s) as to which the parties

2  have met and conferred as described in this Section X.B.4.;

3                    f.      The non-moving parties will have fifteen (15) days to respond to

4  any such motion;

5                    g.      The Special Master shall attempt within fifteen (15) days after

6  filing of the final brief to resolve the dispute and may schedule a hearing or other proceeding,

7  including an evidentiary hearing, to resolve the matter; and

8                    h.      Within thirty (30) days of any hearing, the Special Master shall

9  issue a written determination, including findings of fact if requested by any party.

10              5.      The provisions of this Section do not prevent Lead Counsel, EEOC or

11  Abercrombie from promptly bringing an issue directly before the Court when exigent facts or

12  circumstances require immediate Court action to prevent a serious violation of the terms of this

13  Decree, which otherwise would be without meaningful remedy.  The moving papers shall explain

14  the facts and circumstances that allegedly necessitate immediate action by the Court.  Absent a

15  showing of exigent facts or circumstances, the Court shall refer the matter to the Special Master

16  to resolve in accordance with procedures set forth above.  If any such matter is brought before the

17  Court requesting immediate action, the other parties shall be provided with appropriate actual

18  notice, and an opportunity to be heard on the motion, under the Local Rules of the Court and the

19  Federal Rules of Civil Procedure.  The Court in its discretion may set such procedures for

20  emergency consideration as are appropriate to the particular facts or circumstances, but no such

21  matter may be heard or considered on an ex parte basis.

22              6.      All fees and expenses of the Special Master shall be paid by Abercrombie.

23              7.      Lead Counsel, EEOC or Abercrombie may appeal a decision of the Special

24  Master to the Court provided that such an appeal is made within fourteen (14) days of receipt of

25  notice of the decision by the Special Master.  Any such appeal shall be brought by motion under

26  the Local Rules of the Court and Federal Rules of Civil Procedure.  The decision rendered by the

27  Special Master shall be affirmed unless the Court determines that the Special Master made clearly

28  erroneous findings of fact or wrongly interpreted or applied the Consent Decree.  A party may

1   seek on appeal any remedy provided by law, provided that such remedy is consistent with the

2   provisions of this Decree.

3          8.      Only Lead Counsel, EEOC or Abercrombie shall have standing to move

4   the Court to enforce, apply, or modify this Decree.  Any individual concerned about

5   Abercrombie's compliance with this Decree may so notify Lead Counsel and/or the EEOC and

6   request that they examine Abercrombie's compliance and seek such relief, if any, as may be

7   appropriate.

8          9.      In the event that any party seeks to utilize the dispute resolution procedure

9   set forth in Section X.B, then each party shall bear its own attorneys' fees, costs and expenses for

10  all work performed through resolution by the Special Master.  In the event that any party seeks to

11  appeal any decision of the Special Master, then the prevailing party in such matter shall be

12  entitled to recover reasonable attorneys' fees, costs and expenses incurred in such appeal from the

13  other party, consistent with applicable standards under Title VII.  Whether and to what extent any

14  party is a prevailing party and awarded fees and expenses shall be determined in the sole and

15  absolute discretion of the Court.  This provision shall not apply to the EEOC, as Abercrombie and

16  the EEOC mutually agree not to seek fees under this Section from each other.

17      **C.      Marketing.**

18         1.      Abercrombie believes that the artistic aspect of its marketing materials is a

19  critical factor driving the success of Abercrombie and its brand.  As a company committed to

20  achieving diversity in its store associates, as reflected in the other terms of this Decree,

21  Abercrombie will reflect diversity, as reflected by the major racial/ethnic minority populations of

22  the United States, in its marketing materials (taken as a whole).  Lead Counsel and/or the EEOC

23  may assert that Abercrombie has not met its commitment under this paragraph for the following

24  purposes only:

25         a.      In the event that, at the end of the twenty-four (24) month period

26  following the Approval Date, the Applicant Rate for any Minority group is lower than such

27  group's interim Benchmark for the fourth six-month period, Lead Counsel and/or the EEOC may

28  assert that this was caused by a chilling of applicant flow caused in part by not meeting the

426266.1                              - 19 -

commitment in paragraph 1 of this Section.  Any such assertion, and Abercrombie's response

thereto, may be considered by the Special Master.  If the Special Master accepts the assertion of

Lead Counsel and/or the EEOC, then the sole remedy shall be that the applicable interim

Benchmark shall remain in effect unless and until the applicable Applicant Rate exceeds the

applicable interim Benchmark.

            b.     In the event that Abercrombie seeks to obtain early termination of

this Decree, under Section VI.B. hereof, and in the event that Lead Counsel and/or the EEOC

seeks to challenge such early termination, Lead Counsel and/or the EEOC may assert that

Abercrombie has not met its commitment in paragraph 1 of this Section.  Any such assertion, and

Abercrombie's response thereto, may be considered by the Special Master and/or the Court, along

with Abercrombie's meeting or failing to meet other provisions of the Decree, in deciding

whether to grant Abercrombie's request for early termination of the Decree.

            2.     Nothing in this Section shall limit the scope of the Monitor's discretion

under Section XVI.A.2. of this Decree in evaluating compliance (including barriers to

compliance) with any of the objectives of the Decree.  However, nothing in this Section or

otherwise in this Decree shall be deemed to provide Lead Counsel, the EEOC, the Monitor, the

Special Master, or the Court with the authority or ability to contest, challenge, alter, or seek to

alter Abercrombie's marketing materials or the selection of photographs or models therefor.

            3.     Marketing materials include specifically, but not exclusively:  quarterly

magazines and similar materials, shopping bags, store posters and video, website, A&F TV, and

purchased advertising.

## XI.   ABERCROMBIE'S INTERNAL PROCEDURES FOR IMPLEMENTING EQUAL EMPLOYMENT AND DIVERSITY PRACTICES

### A.   Creation of Office of Diversity.

            1.     If Abercrombie has not already done so, then within thirty (30) days of the

Approval Date, Abercrombie shall create an Office of Diversity headed by a corporate executive

with the title of Vice President ("Diversity VP").  The Diversity VP shall report directly to the

Chief Executive Officer (CEO) or the Chief Operating Officer (COO) of Abercrombie.

2.      Abercrombie shall appoint a person to serve as Diversity VP no later than sixty (60) days after the Approval Date.  In the event that the position of Diversity VP becomes vacant, Abercrombie shall appoint a successor as soon as practicable after the position becomes vacant, and in any event, if the position remains vacant for sixty (60) days, Abercrombie will retain a search firm to search for a successor, and will appoint an interim Diversity VP who will be charged with temporarily performing the functions of the position.  The following procedures shall apply in selecting the Diversity VP:

a.      Abercrombie shall use Best Efforts to appoint an individual who will be effective in carrying out the duties and responsibilities set forth in Section XI.A.3.

b.      Abercrombie will use a minority-owned search firm, or a minority from a majority-owned search firm, to identify potential candidates for the Diversity VP position. Abercrombie will identify the search firm or individual to Lead Counsel and the EEOC.  Prior to appointing an individual for the Diversity VP position, Abercrombie shall provide Lead Counsel and EEOC with a resume of the individual whom Abercrombie intends to appoint to the position. Within ten (10) days of receiving the resume, Lead Counsel and/or the EEOC may provide their views to Abercrombie as to the individual's qualifications and suitability for the Diversity VP position.  The decision as to which individual to select for the position shall be solely Abercrombie's and is not subject to further review under Section X.

3.      The Diversity VP shall use Best Efforts to ensure Abercrombie's implementation and compliance with the provisions of this Decree, including the following:

a.      Monitoring and implementation of any required changes to human resources systems;

b.      Monitoring and implementation of the Benchmarks provided for under the Decree;

c.      Overseeing the development and implementation of all training and education programs to be provided under the Decree;

d.      Submitting progress reports and other monitoring and reporting material provided for in the Decree;

1     e.     Overseeing the investigation, collection, tracking, and appropriate

2  resolution of complaints of unlawful discrimination submitted under Abercrombie's Internal

3  Complaint Procedure (described herein, in Section XI.D.); and

4     f.     Overseeing the development of all recruiting programs to be

5  provided under this Decree and monitoring the implementation of such programs.

6     4.     Abercrombie will use Best Efforts to provide such staff, funds, and other

7  resources to the Diversity VP as are necessary to discharge Abercrombie's obligations under the

8  Decree.

9     5.     Upon completion of the Internal Complaint Procedure investigation, the

10  Diversity VP shall have the authority to recommend appropriate action to be taken and/or

11  monetary payment to be made to any individual who has submitted a complaint of unlawful

12  discrimination or of a violation of the Decree.

13     **B.**     **Notice and Posting.**

14     1.     Within ten (10) days of the Approval Date, Abercrombie shall post in

15  conspicuous places where employee notices are posted in each of its stores and corporate offices,

16  the Notice attached hereto as Exhibit B.  The Notice shall remain posted in each such location

17  (and in any new stores or corporate offices) for the duration of this Consent Decree.  In addition,

18  the Notice shall be published every four (4) months with the HR 411 Bulletin for the duration of

19  this Consent Decree.  In connection with each Semi-Annual Progress Report, Abercrombie shall

20  certify that the Notice has been posted and remained posted as required above during the

21  preceding six (6) month period.

22     2.     Abercrombie shall also include within its Employee Handbook or

23  otherwise provide to each new employee, the following statement or its equivalent:  "In 2004,

24  Abercrombie voluntarily entered into a Decree, agreeing to undertake actions that demonstrate its

25  strong commitment to diversity and equal employment opportunity.  Each store has a posted

26  notice regarding this decree, and a summary and copy of the Consent Decree are available at

27  [domain name]."

28

**C.      EEO and Diversity Training.**

1.      During the Term of the Decree, Abercrombie shall provide training on equal employment opportunity and compliance with the provisions of the Decree to Managers-In-Training, Assistant Managers, Store Managers and General Managers, to include the following topics:  (1) compliance with the Decree; (2) equal employment opportunity; (3) federal, state and Company prohibitions of unlawful discrimination and retaliation; (4) diversity issues; and (5) other topics that will encourage equal employment in recruiting, hiring, assigning, promoting, and retaining minorities and females.  Such training may be delivered by computer program, live "discussion" format, video format, written materials, or any combination of these or other formats tailored to be effective in communicating the material, provided, however, that such training as occurs within the first twelve months following the Approval Date shall not be provided to participants solely through written materials.  No less than two hours shall be devoted to training on these topics for each participant within four months following (a) the Approval Date, or (b) the date of the participant's hiring as a Manager in Training, or promotion to an Assistant Manager, Store Manager, or General Manager position, whichever occurs la ter.  In addition, during the Term of the Decree, Abercrombie shall provide (on a group or individual basis) at least two hours of additional training described above to Assistant Managers, Store Managers, and General Managers every twelve months after the Assistant Managers, Store Managers, and General Managers last received such training (on a group or individual basis).

2.      During the Term of the Decree, Abercrombie shall provide training on equal employment opportunity and compliance with the provisions of the Decree to all District Managers, Regional Managers, and salaried exempt employees in the departments of Store Administration, Store Communications, Security, Stores HR, Store Operations, and Store Control, to include the following topics:  (1) compliance with the Decree; (2) equal employment opportunity; (3) federal, state, and Company prohibitions of unlawful discrimination and retaliation; (4) diversity issues; and (5) other topics that will encourage equal employment recruiting, hiring, training, promoting, and retaining minorities and females.  Such training may be delivered by computer program, live "discussion" format, video format, written materials, or

any combination of these or other formats tailored to be effective in communicating the material, provided, however, that such training as occurs within the first twelve months following the Approval Date shall not be provided to participants solely through written materials.  No less than two hours shall be devoted to the training on these topics for each participant within four months following (a) the Approval Date, or (b) the date of the participant's promotion to District Manager or Regional Manager position, whichever occurs later.  In addition, during the Term of the Decree, Abercrombie shall provide (on a group or individual basis) at least two hours of additional training as described above to District Managers, Regional Managers, and salaried exempt employees in the departments of Store Administration, Store Communications, Security, Stores HR, Store Operations, and Store Control, every twelve months after the District Managers, Regional Managers, and corporate employees last received such training.  Provided further that if Abercrombie holds a meeting of District and/or Regional Managers in order to conduct training, then at least one hour of the training described above shall be done in live "discussion" format at such meeting.

3.      Within thirty (30) days following the Approval Date, Abercrombie will train its human resources associates who have substantive responsibilities related to compliance with fair employment laws, and the practices and procedures established by this Decree.  New human resources associates shall receive such training within thirty (30) days of their date of entry into such positions.  Such training shall include, but not be limited to:  (a) federal and state equal employment opportunity laws, including but not limited to the general provisions of these laws, the bases on which discrimination is prohibited under these laws, the identity, roles and responsibilities of agencies established to enforce these laws, and the principles and objectives underlying these laws; (b) the application of equal employment opportunity to typical employment situations, including but not limited to recruiting, hiring, job assignment, managerial promotion, and other career advancement opportunities, and general recruiting, hiring and supervision without engaging in racial, ethnic or gender stereotyping; (c) the provisions and requirements of the Decree; (d) the Internal Complaint Procedure; (e) the role and responsibility of the human resources staff; and (f) following up EEO complaints and investigations (including,

but not limited to, addressing potential or alleged retaliation, working with the complainant, and appropriate discipline and other remedial measures).

4.      The training described in this section may be held in conjunction with other Company business, at Abercrombie's discretion, and may be organized geographically in such fashion as Abercrombie deems appropriate.

5.      Abercrombie will provide Lead Counsel and the EEOC with the proposed plan for training discussed in Sections XI.C. 2, 3 and 4 in order to provide an opportunity for comment. Lead Counsel and the EEOC will provide comments, if any, within twenty-one (21) days of receipt. Abercrombie shall respond to such comments within fifteen (15) days of receipt. If the parties cannot agree on the proposed plan for training, any disputes will be submitted to the Special Master for resolution. The proposed plan for training will be presumed to be acceptable unless Lead Counsel and/or EEOC demonstrate that the proposed plan for training is improper.

**D.      Internal Complaint Procedure.**

1.      If Abercrombie has not already done so, then within thirty (30) days of the Approval Date, Abercrombie shall develop an Internal Complaint Procedure to provide for the filing, investigation and, if appropriate, remedying of complaints of discrimination or retaliation by associates or applicants for employment on the basis of race, color, national origin or gender, or where a violation of this Decree has occurred or is alleged. Abercrombie will implement the Internal Complaint Procedure within sixty (60) days of the Approval Date. Abercrombie will provide Lead Counsel and EEOC with the proposed Internal Complaint Procedure in order to provide an opportunity for comment regarding the proposed procedure. Lead Counsel and the EEOC will provide comments, if any, within twenty-one (21) days of receipt of the Internal Complaint Procedure. Abercrombie shall respond to such comments within fifteen (15) days of receipt. If the parties cannot agree on the Internal Complaint Procedure, any disputes will be submitted to the Special Master for resolution. The Internal Complaint Procedure will be presumed to be acceptable unless Lead Counsel and EEOC demonstrate that the proposed Internal Complaint Procedure is improper. Any decision of the Special Master is final and not subject to appeal.

2.     The Diversity VP shall be responsible for oversight of:

    a.     publicizing the availability of this Internal Complaint Procedure;

    b.     tracking and collecting all complaints filed thereunder;

    c.     investigating and resolving such complaints in a timely and effective manner; and

    d.     retaining records regarding the resolution of all such complaints.

3.     The internal complaint procedure shall incorporate the following elements:

    a.     A policy describing how investigations will be conducted, to be included in the Associate Handbook;

    b.     A prompt commencement and thorough investigation by a person trained to conduct such investigations who is not connected with the complaint;

    c.     A statement that an investigation should include interviews of all relevant witnesses, including the complainant, and reviews of all relevant documents;

    d.     A written record of all investigatory steps, and any findings and conclusions, and any actions taken;

    e.     Provision for the reasonably prompt resolution of such complaints;

    f.     An opportunity for the complainant to review and respond to tentative findings, except in those circumstances in which it is necessary to take immediate action;

    g.     Confidentiality of the complaint and investigation to the extent possible;

    h.     Appropriate communication of the final conclusions of the investigation provided to the complainant;

    i.     An appeal procedure to the Vice President of Human Resources, or other appropriate Abercrombie representative, should the complainant be dissatisfied with the results of the investigation; and

    j.     A notice that employees or applicants complaining of discrimination may use the company's internal complaint procedure and/or may file charges with

the EEOC or state or local Fair Employment Practice (FEP) agencies. The notice shall also state that filing an internal complaint does not relieve the complainant of meeting any applicable deadline for the filing of a charge or complaint with EEOC or state or local FEP agencies.

4.    Abercrombie may encourage resolution of internal complaints at a local level prior to investigation, but not require such informal resolution. A complainant shall not be required to first report the complaint to a person who is accused of the inappropriate conduct to invoke the Internal Complaint Procedure.

5.    The Internal Complaint Procedure will permit, but not require, an employee to initiate the complaint process by submitting a written complaint on a form designed for that purpose. Abercrombie shall also set up or maintain a toll-free telephone number to receive complaints and shall designate additional persons at the district level who will be authorized to accept such complaints on behalf of the Company.

6.    The Internal Complaint Procedure shall be incorporated into the Associate Handbook. Abercrombie shall continue to issue the Associate Handbook to all new store associates.

7.    Abercrombie will maintain a policy of nondiscrimination and equal treatment, including a policy of zero tolerance for unlawful discrimination, in all of its employment practices.

8.    The Internal Complaint Procedure is not intended to supplant the right of any employee to file a charge or complaint of discrimination or retaliation under any available municipal, state, or federal law.

9.    Abercrombie shall publish with the Internal Complaint Procedure the following elements that will be included in the procedure:

a.    A statement that it is unacceptable to retaliate against any associate for use of the Internal Complaint Procedure, for assisting in the investigation of a complaint, or for otherwise assisting in the utilization of the procedure. Abercrombie reserves the right to take disciplinary action against an associate who intentionally provides false information in connection with the procedure.

b.       A statement that if an allegation of discrimination or retaliation against a manager or other associate is substantiated, then such conduct will result in appropriate discipline, up to and including discharge.

**E.       Performance Evaluations.**

1.       If Abercrombie has not already done so prior to the Approval Date, it shall revise its performance evaluation forms for Assistant Managers, Store Managers, General Managers, District Managers, and Regional Managers in order to include as measures of performance: (1) compliance with Abercrombie's Equal Employment Opportunity Policy and Discrimination and Harassment Policy; (2) attainment and management of diversity in the workplace; and (3) efforts to meet Benchmarks and to comply with other provisions of the Decree.  The results of such evaluation factors shall have a meaningful impact upon compensation and/or bonus calculation.

2.       At least thirty (30) days prior to implementation of the performance evaluation forms described in Section XI.D.1, Abercrombie will provide Lead Counsel and the EEOC with the proposed revisions in order to provide an opportunity for comment regarding the revisions.  Lead Counsel and the EEOC will provide comments, if any, within twenty-one (21) days of receipt of the proposed revisions.  Abercrombie shall respond to such comments within fifteen (15) days of receipt.  If the parties cannot agree on the proposed revisions, any disputes will be submitted to the Special Master for resolution.  The proposed revisions will be presumed to be acceptable unless Lead Counsel and/or EEOC demonstrate that the proposed revisions are improper.  Any decision of the Special Master is final and not subject to appeal.

**XII.     JOB ANALYSIS, MINIMUM ELIGIBILITY REQUIREMENTS, JOB CRITERIA, RECRUITMENT, HIRING, JOB ASSIGNMENTS AND MANAGERIAL PROMOTION AND STAFFING**

**A.       Job Analysis and Job Criteria.**

1.       The parties stipulate and agree upon Abercrombie's retention of Kathleen Lundquist, a professional industrial organizational psychologist, to develop a written job analysis and job-related criteria for each in-store store position.

2.      No later than four (4) months after the Approval Date, in consultation with the industrial organizational psychologist, Abercrombie shall develop selection criteria for in-store positions, including Minimum Eligibility Requirements that are job related and consistent with business necessity to the extent required by Title VII.  Selection criteria shall be subject to challenge under Section X of this Decree only if a particular position's selection criteria, taken collectively, cause adverse impact in selection rate for African Americans, Asian Americans, Latinos, or women.  If the selection criteria cause such adverse impact and are challenged under Section X of this Decree, the selection criteria shall be affirmed if Abercrombie shows that it has used Best Efforts to determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance.

3.      Abercrombie will not use as a criterion for store positions any of the following:  enrollment in a target college, participation in college fraternity or sorority activities generally, participation in particular fraternities or sororities, participation in particular athletic activities, or gender.  Abercrombie will not use enrollment in college as a Minimum Eligibility Requirement for non-management store positions.

4.      Abercrombie will provide Lead Counsel and the EEOC with the  job analyses, including Minimum Eligibility Requirements, and job-related criteria in order to provide an opportunity for comment.  The content of the job analyses and job-related criteria prepared pursuant to Section XII.A.1. will not be subject to review under Section X of this Decree.

**B.      Recruitment and Hiring.**

1.      No later than four months after the Approval Date, Abercrombie, in consultation with the industrial organizational psychologist, shall develop and implement a written Recruitment and Hiring Protocol to recruit and hire job applicants for all hourly in-store positions and the Manager-in-Training position.  The Recruitment  and Hiring Protocol shall require that Abercrombie affirmatively seek out applications from qualified African Americans, Asian Americans, and Latinos of both genders.

1           2.      Abercrombie's recruitment and operations materials will reflect diversity in

2    race, color, national origin and gender in the United States, including the use of African

3    Americans, Asian Americans and Latino models of both genders.

4           3.      The Recruitment and Hiring Protocol shall prohibit Abercrombie from

5    discouraging the submission of an application by any qualified person, or discarding or otherwise

6    diverting any application submitted.  In addition, the Recruitment and Hiring Protocol shall

7    instruct Managers to make available and accept applications for Manager-in-Training at all of the

8    places and through all of the means that applications for Brand Representative are made available

9    and received.

10          4.      The Recruitment and Hiring Protocol shall require clear and concise

11   written job descriptions for each in-store non-managerial position and the Manager-in-Training

12   position.

13          5.      Job descriptions will be made available to anyone who requests them, and

14   non-management job descriptions will be made available in a single package so that potential

15   applicants are made aware of the differences among positions.

16          6.      The Recruitment and Hiring Protocol will contain instructions for

17   dissemination of applications, the conduct of structured interviews, programs to train involved

18   staff, hiring decisions, documentation, and the hiring process generally.

19          7.      The Recruitment and Hiring Protocol shall instruct Managers that Minority

20   associates shall not be disproportionately assigned involuntarily to any particular positions on the

21   basis of race or national origin.

22          8.      Within sixty (60) days of the adoption of the Recruitment and Hiring

23   Protocol and continuing every twelve (12) months thereafter, Abercrombie will use Best Efforts

24   to train all involved staff in the conduct of structured interviews and other elements of the

25   Recruitment and Hiring Protocol.

26          9.      Abercrombie will provide Lead Counsel and the EEOC with the

27   Recruitment and Hiring Protocol and the job descriptions in order to provide an opportunity for

28   comment regarding the adequacy of the Recruiting and Hiring Protocol.  If the parties cannot

agree on the Recruitment and Hiring Protocol, any disputes will be submitted to the Special
Master for resolution and the Recruitment and Hiring Protocol shall be affirmed by the Special
Master unless Lead Counsel and/or the EEOC demonstrate that said protocol is clearly improper
and not in accordance with accepted industrial organizational psychologist professional standards.
Any decision of the Special Master is final and not subject to appeal.

### C. Managerial Promotions.

1. Abercrombie will use Best Efforts to promote African Americans, Latinos,
Asian Americans and women at the following rates: Beginning in the second six-month period,
Abercrombie shall use its Best Efforts to promote women and members of each Minority Group
to positions of Assistant Manager and Store Manager/General Manager in a proportion that is no
less than the specific group's proportion of the available feeder pool. The appropriate available
feeder pool for Assistant Managers consists of all incumbent Managers-in-Training. The
appropriate available feeder pool for Store Manager/General Manager consists of all incumbent
Assistant Managers. The measuring date of incumbents in the available feeder pool shall be the
last day of the preceding six-month period. For this set of Benchmarks only, if Abercrombie
promotes women and African Americans, Latinos, and Asian Americans to such positions in a
proportion that deviates by no more than two standard deviations from the specific group's
proportion of the available feeder pool, Abercrombie shall be deemed to have achieved its
promotion Benchmarks.

### XIII. AFFIRMATIVE RECRUITING EFFORTS

### A. Diversity Recruiters.

In the first six months of the Decree, if not before, Abercrombie will hire and maintain at
least ten (10) full-time diversity recruiters who will be based in major metropolitan areas and will
be charged with recruiting Minority applicants, including female applicants of each Minority,
who meet Minimal Eligibility Requirements, into in-store positions. No later than twelve months
after the Approval Date, Abercrombie will hire and maintain an additional fifteen (15) full-time
diversity recruiters. Abercrombie will use Best Efforts to ensure that its recruiters themselves
reflect diversity in race/national origin and gender. Abercrombie will consider both external and

internal candidates for recruiter positions. Abercrombie will provide the resumes of the diversity recruiters to Lead Counsel and the EEOC. If Abercrombie has met the Benchmarks set forth in Section XIV for the first thirty (30) months of the term of this Decree, Abercrombie shall have the right to petition the Special Master, and if necessary the Court, for modification of this provision.

**B.      Advertisements.**

During the Term of the Decree, Abercrombie will advertise for in-store employment opportunities in periodicals or other media that target African Americans, Asian Americans, and/or Latinos of both genders. Abercrombie will provide a list of media publications in which advertisements were placed to Lead Counsel and the EEOC on an annual basis.

**C.      Recruiting Events.**

During the Term of the Decree, Abercrombie will attend Minority job fairs and Minority recruiting events that are attended by African Americans, Asian Americans, and/or Latinos of both genders.

**D.      Diversity Consultant.**

During the Term of the Decree, Abercrombie will utilize a diversity consultant whose identity will be made known to Lead Counsel and the EEOC. The diversity consultant will conduct diversity/inclusion training for all field based managers and selected home office personnel. The diversity consultant will also, in conjunction with the VP of Diversity, aid in identifying sources of qualified Minority candidates. Abercrombie will ensure that its diversity consultant, or any subcontracted consultant, has familiarity with and experience in providing diversity training as to all three of the minority groups – African American, Asian American and Latinos – and gender.

**E.      Documentation.**

Abercrombie will ensure that its recruiters document their recruiting efforts and that such records are retained for review by the Vice President of Diversity and are available to the monitor. Such documentation shall include, specifically but not exclusively: 1) a description of

the placement of advertisements (publication, size, time, duration, targeted audience) and 2) a description of events/fairs attended (place, date, targeted audience).

## XIV. BENCHMARKS

### A. General Principles

1. Abercrombie shall use Best Efforts to meet the selection benchmarks set forth in this section. These Benchmarks do not establish maximum or minimum rates for the selection of African Americans, Latinos, Asian Americans or women; rather these Benchmarks establish selection rates that Abercrombie will use Best Efforts to achieve.

2. In attempting to meet these Benchmarks, Abercrombie shall not be required to select unqualified persons or to displace any incumbent associate from his or her position. These Benchmarks are not quotas; rather, they are Benchmarks designed to afford guidance as to whether Abercrombie is making selection decisions in such a way as to afford equal employment opportunity.

3. Abercrombie's failure to achieve a Benchmark for a particular position or period will not be considered a violation of this Decree unless Abercrombie has failed to use Best Efforts to meet the Benchmark. Should Abercrombie demonstrate that the proportion of good faith offers made to applicants of a particular group as compared to all applicants was at least as high as the Benchmark percentage, such evidence will conclusively establish that the Benchmark was met.

4. Unless otherwise specified, achievement of the Benchmarks will be calculated on a semi-annual basis and based on companywide employment data.

5. Failure to achieve a Benchmark by a fraction of a person shall not be deemed to constitute a failure to achieve a Benchmark under the Decree.

6. Abercrombie shall use voluntary self-identification to identify the race and gender of applicants and employees. No party shall influence an applicant's or employee's self-identification. Absent clear applicant or employee error, no applicant or employee shall be permitted to change his or her identified race or ethnicity.

**B.**   **Interim Hiring Goals**

1.   Interim hiring Benchmarks shall be established for Benchmark Positions.

2.   Abercrombie shall monitor, by applicant self-identification, applicant flow of African Americans, Asian Americans, Latinos and women.

3.   "Applicant Rate" shall be the actual applicant flow rate of a group as measured on a six-month basis.

4.   "Maintenance Level" shall be the proportion of Asian Americans hired compared to all groups hired in a position as of the Preliminary Approval Date of this Decree.

5.   "Percentage Level" for African-Americans shall be six-and-a-half percent (6.5%) for the second six-month period, seven-and-a-half percent (7.5%) for the third six-month period, and nine percent (9%) for the fourth six-month period.

6.   "Percentage Level" for Latinos shall be seven percent (7%) for the second six-month period, eight percent (8%) for the third six-month period, and nine percent (9%) for the fourth six-month period.

7.   "Percentage Level" for women shall be fifty-three percent (53%) for the second six-month period, fifty-three percent (53%) for the third six-month period, and fifty-three percent (53%) for the fourth six-month period.

8.   The first six-month period begins at the beginning of the month following the Approval Date.

9.   Brand Representative Position.

Abercrombie will use Best Efforts to meet the following interim hiring goals:

a.   First six-month period:

African American: five percent (5%);

Latinos:  six percent (6%);

Asian Americans: Maintenance Level; and

Women: fifty-three percent (53%).

b.  Second six-month period:

African American: the greater of Percentage Level of six-and-a-half percent (6.5%) or Applicant Rate, as adjusted;[1]

Latinos:  the greater of Percentage Level of seven percent (7%) or Applicant Rate, as adjusted;[2]

Asian Americans:  the greater of Maintenance Level or Applicant Rate; and

Women:  the greater of Percentage Level of fifty-three percent (53%) or Applicant Rate;

c.  Third six-month period:

African Americans:  the greater of Percentage Level of seven-and-a-half percent (7.5%) or Applicant Rate, as adjusted;[3]

Latinos:  the greater of Percentage Level of eight percent (8%) or Applicant Rate, as adjusted;[4]

Asian Americans:  the greater of Maintenance Level or Applicant Rate; and

Women: the greater of Percentage Level of fifty-three percent (53%) or Applicant Rate;

d.  Fourth six-month period:

African Americans:  the greater of Percentage Level of nine percent (9%) or Applicant Rate in the third six-month period;

---

[1] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by three percent (3%) the proportion of African Americans hired into the Brand Representative position compared to all Minority individuals hired into that position in the first six-month period.

[2] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by three percent (3%) the proportion of Latinos hired into the Brand Representative position compared to all Minority individuals hired into that position in the first six-month period.

[3] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by one-and-a-half percent (1.5%) the proportion of African Americans hired into the Brand Representative position compared to all Minority individuals hired into that position in the second six-month period.

[4] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by one-and-a-half percent (1.5%) the proportion of Latinos hired into the Brand Representative position compared to all Minority individuals hired into that position in the second six-month period.

Latinos:  the greater of Percentage Level of nine percent (9%) or

Applicant Rate in the third six-month period;

Asian Americans:  the greater of Maintenance Level or Applicant

Rate in the third six-month period; and

Women:  the greater of Percentage Rate of fifty-three percent

(53%) or Applicant Rate.

10.    Minority Female Goal.

In addition to the interim hiring goals set forth in Section XIV.B.9,

Abercrombie will use Best Efforts to meet the following interim hiring goals for African

American women for the Brand Representative position:

a.    First six-month period:

4.25 percent of all women hired;

b.    Second six-month period:

the greater of 5.5 percent of all women hired or Applicant Rate, as

adjusted;[5]

c.    Third six-month period:

the greater of 6.4 percent of all women hired or Applicant Rate, as

adjusted;[6]

d.    Fourth six-month period:

the greater of 7.6 percent of all women hired or Applicant Rate.

Notwithstanding the foregoing, Abercrombie shall be deemed to have

achieved this Benchmark if Abercrombie achieves its Benchmark for African Americans and if

Abercrombie hires or extends good faith offers to African American women at the greater of the

following rates: (1) 45% of Abercrombie's total African American hires; or (2) the Applicant

---

[5] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by three percent (3%) the proportion of African American women hired into the Brand Representative position compared to all minority women hired into that position in the first six-month period.

[6] "As adjusted" means Applicant Rate supplemented by a percentage determined by multiplying by one-and-a-half percent (1.5%) the proportion of African American women hired into the Brand Representative position compared to all minority women hired into that position in the second six-month period.

1  Rate of African American women. In addition, Abercrombie shall report the number of all Latina

2  and Asian American women hired in the Brand Representative position. If, in two consecutive

3  six-month periods, the number of Latina women or Asian American women hired as a proportion

4  of all women hired into that position is lower to a statistically significant degree than the number

5  of Latina women or Asian American women as a proportion of all women employed in that

6  particular position at the time this Decree takes effect, the parties shall meet and confer regarding

7  the matter.

8             11.     Manager-in-Training Position.

9             Abercrombie will use Best Efforts to meet the following interim hiring

10  goals:

11                a.     First six-month period:

12                    African American: three-and-a-half percent (3.5%);

13                    Latinos: three-and-a-half percent (3.5%) ;

14                    Asian Americans: three and four-tenths percent (3.4%); and

15                    Women: fifty-three (53) percent .

16                b.     Second six-month period:

17                    African American: four-and-a-half percent (4.5%) or Applicant

18                    Rate;

19                    Latinos: four-and-a-half percent (4.5%) or Applicant Rate;

20                    Asian Americans: three and six-tenths percent (3.6%) or Applicant

21                    Rate; and

22                    Women:  fifty-three percent (53%) or Applicant Rate.

23                c.     Third six-month period:

24                    African American: five-and-a-half percent (5.5%) or Applicant

25                    Rate;

26                    Latinos: five-and-a-half percent (5.5%) or Applicant Rate;

27                    Asian Americans: three and eight-tenths percent (3.8%) or

28                    Applicant Rate; and

Women: fifty-three percent (53%) or Applicant Rate.

        d.      <u>Fourth six-month period</u>:

African American: seven percent (7%) or Applicant Rate;

Latinos: seven percent (7%) or Applicant Rate**;**

Asian Americans: four percent (4%) or Applicant Rate; and

Women: fifty-three percent (53%) or Applicant Rate.

      12.      Notwithstanding the foregoing provisions XIV.B.9.-11., a rebuttable presumption shall arise that Abercrombie has exercised its Best Efforts to meet the Minority interim hiring goals for a particular six-month period if (i) Abercrombie is then in compliance with its obligations under the Decree and (ii) Abercrombie has met Percentage Level interim goals for two of the three Minority groups.  However, the rebuttable presumption shall not be deemed to arise if Abercrombie has missed an interim goal for the same group for a second consecutive period.  Nor would a rebuttable presumption arise if the interim goal Abercrombie has missed is based upon the Applicant Rate.  If the presumption is deemed to arise, and if Lead Counsel and/or the EEOC seek to challenge whether Abercrombie has used Best Efforts to meet the Minority interim hiring goals, Lead Counsel and/or the EEOC shall have the burden of proving Abercrombie's failure to use Best Efforts by a preponderance of the evidence.

**C.**     **<u>Applicant Rate Goals</u>**

After the period when Interim Hiring Goals, described in Part B above, will be used, Abercrombie shall use Applicant Rate in the preceding six-month period as a goal for Benchmark Positions during the remaining term of the Decree.  Abercrombie will identify the applicable Applicant Rate to the Monitor, Lead Counsel, and the EEOC within thirty (30) days of the beginning of each six-month period.  If Abercrombie has been found to have failed to use Best Efforts to implement Benchmarks, the parties shall meet and confer under the direction of the Special Master to determine when and under what conditions Abercrombie may proceed to use of Applicant Rate goals.

## XV.   REPORTING, RECORDKEEPING, AND COMPLIANCE MEETINGS

### A.   Documents To Be Preserved For The Duration of The Decree.

Abercrombie shall retain the following employment-related records for the Duration of the Decree or as required by state or federal law, whichever is longer:

    1.   Internal Complaint Procedure;

    2.   Job Analyses for Benchmark Positions;

    3.   Minimum Eligibility Requirements and job-related criteria for Benchmark Positions;

    4.   Recruitment and Hiring Protocol;

    5.   Job descriptions for  Benchmark Positions;

    6.   Training plans;

    7.   Semi-Annual Progress Reports; and

    8.   Monitor's Reports and Executive Summaries.

### B.   Documents to Be Maintained for Two Years.

The following documents shall be maintained for two years from the date the document is created, or as required by state or federal law, whichever is longer:

    1.   Performance Evaluations of Managers;

    2.   Training Program Materials.;

    3.   Internal Complaints;

    4.   Recruiting Documentation described in Section XIII.E; and

    5.   Marketing Materials.

### C.   Access to Documents.

    1.   The Monitor shall, upon reasonable notice, be entitled to review all documents, including electronic data in machine-readable form, that are required to be maintained or created by the express terms of this Decree or that are used or referred to by Abercrombie to prepare Semi-Annual Progress Reports, except, however, that the Monitor shall not be entitled to review any such documents that are protected by attorney-client privilege or attorney work product doctrine ("privileged documents").

2.      Lead Counsel and the EEOC may seek access to non-privileged documents described in C.1 above by requesting, with notice to Abercrombie, copies of such documents from the Monitor.  Upon request, and notice to Abercrombie, the Monitor shall provide Lead Counsel and the EEOC with access to documents described in Section XV.C.1 unless Abercrombie objects within five (5) days of receipt of notice.  If Abercrombie timely objects, the objection shall be resolved by the Monitor.  The Monitor shall determine any matter in dispute by requiring that Lead Counsel and the EEOC demonstrate the access requested is relevant to a claim of breach of the Decree.

3.      All documents required to be maintained by the express terms of the Decree, and all documents that are provided to the Monitor, Lead Counsel, or the EEOC under the terms of the Decree, are and shall be treated as confidential business records.  Neither Lead Counsel, the EEOC nor the Monitor shall divulge any such documents to any third party unless so ordered by the Court after notice to Abercrombie and an opportunity for Abercrombie to object to such disclosure and be heard.  Upon expiration of this Decree, Lead Counsel, the EEOC and the Monitor shall promptly return to Abercrombie or destroy any and all documents Abercrombie furnished under this Decree.  This provision shall not prevent a party from filing otherwise confidential documents with the Court, provided that, either: (a) such documents are filed under seal; or (b) Lead Counsel and/or the EEOC give ten (10) days advance notice to Abercrombie, to permit opportunity to seek a protective order sealing such documents.

**D.      Reporting Schedule.**

Within sixty (60) days of completion of the initial Benchmark period, and at six (6) month intervals thereafter through the Term of the Decree, Abercrombie shall provide Semi-Annual Progress Reports to the Monitor, Lead Counsel and EEOC on Abercrombie's compliance with the Decree's requirements.  All such Reports shall be subject to the same confidentiality restrictions described in Section XV.C.3. above.

**E.      Contents of the Semi-Annual Progress Reports.**

Abercrombie's Semi-Annual Progress Reports shall include information regarding the following:

1.      Progress in achieving each of the Benchmarks described above in Section XIV.  This report will include the applicable goal proportion and the actual achieved proportion.  Abercrombie will indicate any shortfalls in achieving Benchmarks for the preceding six-month period, will analyze the possible reasons for such shortfall, and will identify plans to facilitate achievement of the Benchmark not met.  If applicable, Abercrombie will analyze possible reasons if any division reflects shortfalls (i.e., less then 80 percent of companywide level) even if companywide Benchmarks are satisfied.  (Division is defined as Abercrombie & Fitch, Hollister, abercrombie, or any other concept adopted by Abercrombie during the period of this Decree)  In addition, if applicable, Abercrombie will analyze possible reasons that any Benchmark was met through good faith offers only.

2.      Number and proportion of persons companywide in the preceding six months by race/ethnicity and gender (i.e.,  African American men, African American women, Asian American men, Asian American women, Latino men, Latina women, white men, white women) extended a good faith offer, hired or promoted (each of which shall be separately reported) into (a) each in-store non-managerial position (e.g., Brand Representative, stocker, overnight); (b) Manager-In-Training; (c) Assistant Manager; (d) Store Manager; and (e) General Manager.

3.      Number and proportion of persons in the preceding six months extended a good faith offer, hired or promoted (each of which shall be separately reported) by store, state and division by race/ethnicity and gender (i.e. African American men, African American women, Asian American men, Asian American women, Latino men, Latina women, white men, white women) for (a) each in-store non-managerial position (e.g., Brand Representative, stocker, overnight); (b)  Manager-In-Training; (c) Assistant Manager; (d) Store Manager; and (e) General Manager.

4.      Composition of incumbent associates by each store position and by race, ethnicity and gender within each store, state, division and company-wide at the end of the preceding six month period.

5. Number and proportion of associates in each in-store non-managerial position (e.g., Brand Representative, stocker, overnight) by race/ethnicity and gender and by store, state, division, and companywide in the preceding six months;

6. Attrition or termination of associates from each store position by race, ethnicity and gender and by reason for leaving within each store, state, and division during the preceding six month period;

7. Confirmation by District Managers that the poster required by Section XI.B is posted, with copies attached;

8. Summary of activity of Diversity V.P. in implementing affirmative recruitment efforts, diversity training and Internal Complaint Procedure, with copies of materials attached;

9. Copies of Company materials depicting persons referred to in Section XII.B.2 and an indication of which persons used are or have been Abercrombie associates;

10. Copies of posting and publication of job descriptions of in-store positions as required in Section XII.B.5;

11. Copies of recruitment documentation referred to in Section XIII.

12. The number of hourly in-store employees by race/gender that have been terminated in the preceding six-month reporting period at the direction of home office management excluding human resources.

13. Copies of all marketing materials used by the Company in the preceding six months (e.g., print, television or internet advertising; quarterly magazines, store catalogs, and similar materials; store posters; videos; A&F television; shopping bags; etc.).

**F.** **Compliance Meetings.**

1. Within three months of the Approval Date, representatives of Abercrombie, Lead Counsel, and the EEOC, shall confer with the Monitor in order to review the initial implementation of the Decree, Abercrombie's compliance with the requirements, and other related topics. Thereafter, representatives of Abercrombie, Lead Counsel, and the EEOC, shall confer with the Monitor every six months to review the Semi-Annual Progress Reports required

by Section XV.E above.  Within one month of the initial Progress Report and after each such Report submitted thereafter representatives of Abercrombie, Lead Counsel and the EEOC shall confer with the Monitor in order to review the matters described above.  Such meetings shall be in person if requested by Lead Counsel, EEOC, or Abercrombie, except that if, after three years after the Approval Date, Abercrombie has met the Benchmarks, then only one compliance meeting each year need be in person.

2.   The parties will discuss, among other things, identifying any goal not achieved and an analysis of the reasons that the goal was not achieved and plans that would facilitate achievement of the goal.  In addition, if applicable, the parties will discuss possible reasons that any Benchmark was met through good faith offers only.

3.   The Diversity VP shall attend each Compliance Meeting.  Other officers, managers, and associates of Abercrombie, whose presence will assist the attainment of the purpose of the Compliance Meetings, may attend as appropriate.  Compliance Meetings shall take place in San Francisco (or another mutually agreeable location).

**G.   Status Conference with Court.**

1.   The parties shall conduct an annual status conference with the Court to discuss the status of implementation of the Decree.  Abercrombie, Lead Counsel, and the EEOC may be represented at the status conference.  No party shall file any document with the Court in conjunction with the status conference, unless directed to do so by the Court.

**XVI.   MONITORING OF IMPLEMENTATION**

**A.   Court-Appointed Monitor.**

1.   The parties have stipulated to Fred Alvarez, Esq. of Palo Alto, California for the Court to appoint as a Monitor.

2.   The Monitor will prepare an Annual Compliance Report ("Report") on the status of implementation and Abercrombie's compliance with the terms and objectives of the Decree, as well as an "Executive Summary" of such Report.  The Monitor's Report will include (a) a summary of the requirements of the Decree; and (b) an assessment of Abercrombie's semiannual compliance reports.  The Monitor will review and evaluate Abercrombie's

compliance with the specific terms of this Decree, and identify any barriers to fulfillment of its objectives.  The Monitor will also review and assess the responsibilities and performance of the VP of Diversity.

3.     The Executive Summary shall set forth the substance of the Monitor's findings for the applicable reporting period.  The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, creation of job analyses and descriptions, and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events.  By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters.  The EEOC may respond to any legitimate inquiries by the public, media, or the government, with information contained in the Summary or a copy thereof.  Other than this exception to the EEOC, the Executive Summary and information contained therein would be subject to the confidentiality provisions of Section XV.C.3 of this Decree.

4.     The Monitor will provide the Special Master, Abercrombie, Lead Counsel, and the EEOC with copies of the Report and Executive Summary within ninety (90) days of the anniversary date of the Decree.  The Report shall be subject to the confidentiality restrictions described in Section XV.C.3.

5.     The Monitor shall have reasonable and timely access to relevant books, data (including databases), documents, and other sources of information necessary or appropriate to the exercise of his/her authority, in whatever form they are maintained in the ordinary course of business.  This will include, but not be limited to, access to the following insofar as they relate to compliance with equal employment opportunity law and/or the terms of this Decree: (a) applications and related documents; (b) guidelines or training on recruitment, hiring, job

assignment, and managerial promotion; (c) EEO complaints, and any internal complaints; (d) managerial performance evaluations; (e) records of employee discipline; (f) records of attrition and terminations; (g) recruitment materials; and (h) marketing materials.

6.      The Monitor shall address compliance issues that may arise as follows:

a.      The Monitor shall categorize compliance issues as Low Level, Intermediate Level, or High Level and treat them as follows:

i.      Low Level means non-systemic matters, such as compliance issues arising at a single store.  Low Level issues may be resolved by Abercrombie and the Monitor without consulting Lead Counsel or the EEOC.  Low Level issues that are not resolved by Abercrombie after notice from the Monitor and a reasonable opportunity to cure become Intermediate Level issues.  Low Level issues that are resolved shall only be reported by the number of such issues in each region of Abercrombie in a confidential addendum to the Monitor's report that shall be provided to the parties.  In addition, the Monitor shall maintain a log of all resolved Low Level issues that includes, as to each issue, identification of the store involved and a brief description of the nature of the issue and resolution.  The Monitor shall provide the Special Master with such log on an annual basis.  Neither the Monitor nor the Special Master shall produce such log to Lead Counsel or the EEOC unless and until Lead Counsel and/or the EEOC undertake an enforcement procedure under the Decree in which such information would be relevant, at which point Lead Counsel and/or the EEOC may seek such log through discovery under the standards set forth in Section X.B.4.d above.

ii.      Intermediate Level means either Low Level issues that the Monitor and Abercrombie are unable to resolve after notice and a reasonable opportunity to cure, or systemic issues that arise out of policy or implementation concerns that affect a significant number of individuals.  Prior to reporting Intermediate Level issues, the Monitor shall provide Abercrombie with notice and a reasonable opportunity to cure any Intermediate Level issues.  Intermediate Level issues, including any resolution of such issues, will be reported in Compliance Reports and may be the topic of discussion at Section XV.F Compliance Meetings.

iii.     High Level means situations involving exigent facts or circumstances which require immediate action to prevent a serious violation of the terms of this Decree.  In the event a High Level matter shall arise, the Monitor will immediately notify EEOC, Lead Counsel and Abercrombie of the pressing concern.  The matter shall be resolved in accordance with the provisions of Section X.B.

b.     Upon request, and notice to Abercrombie, the Monitor shall provide Lead Counsel and the EEOC with access to documents described in Section XV.C.1 unless Abercrombie objects within five (5) days of receipt of notice.  If Abercrombie timely objects, the objection shall be resolved in accordance with the provisions of Section X.B.

c.     The Monitor shall not report or disclose any action or matter discovered in the course of the Monitor's function that does not directly relate to the terms of this Decree and Abercrombie's compliance therewith.

7.     Nothing herein shall be interpreted to preclude the Monitor from resolving matters informally between the parties.

8.     The Monitor may audit Abercrombie data for accuracy and/or completeness, or retain an independent expert(s) for this purpose, as he/she deems necessary or appropriate.

9.     The Monitor may visit Abercrombie stores, as well as corporate offices, as necessary to fulfill his/her responsibilities.  The Monitor may also interview and communicate with class members, in-store managers, employees, or other witnesses as necessary to fulfill his/her responsibilities.

10.     The Monitor may request additional information from Abercrombie and may communicate with the Diversity VP, in a manner that assists the Monitor in the exercise of his/her duties.  After reasonable notice, the Monitor may communicate with members of Abercrombie's senior management.  The Monitor may communicate with the Special Master, counsel for Abercrombie, Lead Counsel and the EEOC.

11.     All fees and expenses of the Monitor shall be paid by Abercrombie.

1   **XVII.  MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE**

2       **A.**     **Establishment of Settlement Fund.**

3        1.     Abercrombie shall establish a settlement fund ("Settlement Fund") in the amount of $40,000,000.00 for the purpose of providing individual monetary awards to Class Representatives, Charging Parties and other eligible members of the Settlement Class and funding a portion of the settlement administration expenses, in accordance with the provisions of this Section.  The Settlement Fund will be supplemented by the amount described in Section XVII.A.2.

9        2.     The Settlement Fund will be supplemented by an amount calculated as imputed interest on the $40,000,000.00 as follows:

> $40,000,000.00 multiplied by .025 (2.5% imputed interest) multiplied by a fraction (the numerator of which is the number of days between the Preliminary Approval Date, and the date Abercrombie wire transfers final payment from the Settlement Fund to the Settlement Fund Account as provided in Section XVII.A.4.e. and the denominator of which is 360 days).

15        3.     Lead Counsel and the EEOC will select a Claims Administrator.  The Claims Administrator will open and administer an interest-bearing account ("Settlement Fund Account") designated by Lead Counsel and with a unique Taxpayer Identification Number.

18        4.     Payments will be made by Abercrombie from the Settlement Fund to the Settlement Fund Account as follows:

20           a.     Within seven (7) days of the Preliminary Approval Date, Abercrombie will wire $350,000.00 to the Settlement Fund Account.  This amount is intended to cover costs of the mailed notices and expenses associated with the claims procedure.

23           b.     Within seven (7) days of the Approval Date, Abercrombie will wire $350,000.00 to the Settlement Fund Account.  This amount is intended to cover expenses associated with continued implementation of the claims procedure.

26           c.     If there is no Final Approval of the Consent Decree, then the Claims Administrator shall return to Abercrombie any funds remaining in the Settlement Fund Account from the amounts described in Sections XVII.A.4.a and b.

1                d.      Within seven (7) days of Final Approval, Abercrombie will wire the

2  aggregate amount set forth in Exhibit C to the Settlement Fund Account.  This amount shall be

3  distributed by the Claims Administrator to the Class Representatives and Charging Parties as set

4  forth in Section XVII.B.1.

5                e.      After Final Approval and within seven (7) days after the Claims

6  Administrator has informed Abercrombie in writing that it is prepared to distribute the Settlement

7  Fund to the eligible members of the Settlement Class, Abercrombie will wire an amount to the

8  Settlement Fund Account calculated as follows:

9
10                     $40,000,000.00 as supplemented by the amount calculated in
Section XVII.A.2., less amounts Abercrombie has paid to the
Settlement Fund Account in accordance with Sections XVII.A.4.a.,
11                     b., and d., and less the aggregate amount of opt-out credits as
calculated under the provisions of Section XVII.D.4.

12                f.      Upon payment of the amounts set forth in Section XVII.A.4. from

13  the Settlement Fund to the Settlement Fund Account having been made, Abercrombie will have

14  no further monetary obligation hereunder to Class Representatives, Charging Parties or members

15  of the Settlement Class, including no obligation to pay any funds for distribution to Class

16  Representatives, Charging Parties or members of the Settlement Class; no obligation to pay costs

17  of mailed notices and expenses associated with the claims procedure; and no obligation to pay

18  any other settlement administration costs, except that Abercrombie will be responsible for paying

19  for the published notice of the Settlement Notice as specified in XVII.C.2.

20                5.      Nothing herein shall be deemed to require Abercrombie to separate or

21  segregate its assets into a restricted settlement fund.  The Settlement Fund Account will constitute

22  a restricted settlement fund, and it will be created, managed and disbursed by the Claims

23  Administrator under the supervision of Lead Counsel and the EEOC.  Other than paying funds

24  from the Settlement Fund to the Settlement Fund Account, Abercrombie will have no

25  responsibilities or liabilities with respect to the Settlement Fund Account, its administration, or

26  distributions therefrom.

27

28

B.      **Distribution of Settlement Fund.**

1.      **Class Representatives and EEOC Charging Parties.**

Each Class Representative and each Charging Party shall receive a liquidated amount as set forth in Exhibit C.  This liquidated amount will compensate the Class Representatives or Charging Party for the (a) full settlement of all their claims against Abercrombie; (b) payment in recognition of risks related to being Class Representative or Charging Party; and (c) payment in consideration for the time and effort expended in the Consolidated Litigation or EEOC proceedings.  Payment of these sums shall be made by the Claims Administrator no later than seven (7) days after the receipt of the funds described in Section XVII.A.4.d.

2.      **Settlement Class.**

The remainder of the Settlement Fund Account will be distributed to eligible members of the Settlement Class who do not opt out based on a formula set out in the allocation plan as set forth in Section L.  The distribution of the Settlement Fund Account according to the allocation plan will be undertaken by the Claims Administrator.  Except as set forth in Section XVII.C.2.below, the fees, costs and expenses of the Claims Administrator shall be paid from the Settlement Fund Account, including the interest on the Settlement Fund Account.  All payments to the Claims Administrator shall be approved by Lead Counsel and the EEOC.

C.      **Notice.**

1.      **Mailed Notice.**

Within twenty (20) days following the Preliminary Approval Date, Abercrombie shall provide the Claims Administrator with a computer disk containing the full names, social security numbers, last known addresses and phone numbers, start dates, and, as applicable, end dates of employment with Abercrombie for all in-store hourly and manager employees employed by Abercrombie at any time from February 24, 1999 through the Preliminary Approval Date who are potential Settlement Class members.  Within twenty (20) days following the Preliminary Approval Date, Lead Counsel shall provide the Claims Administrator with a computer readable list of all known potential Settlement Class members and their mailing addresses.  Prior to the mailing of the Notices, the Claims Administrator will combine these lists of potential Settlement

1   Class members received from Abercrombie and Lead Counsel and update any new address

2   information for potential class members as may be available through the National Change of

3   Address system.  The Claims Administrator shall determine through a computer database search

4   the most recent address that may be obtained for each person on the combined list of potential

5   Settlement Class members.  Within sixty (60) days of the Preliminary Approval Date, the Claims

6   Administrator shall mail, via first class postage, Notice of Class Settlement, the Claim Form and

7   the Explanation of Claims Procedure, all in the form approved by the Court in the Preliminary

8   Approval Order, to all known potential Settlement Class members at their last known address and

9   at the most recent address that may have been obtained through the computer database search.

10          **2.      Published Notice.**

11          Abercrombie shall cause to be published the notice of the class settlement in the form

12  approved by the Court in the Preliminary Approval Order, in newspapers and other media set

13  forth in the Preliminary Approval Order.  Abercrombie shall pay for the cost of the published

14  notice, not to exceed $600,000.00.

15          **D.      Objections and Exclusions.**

16          Class members may object to or opt-out of the class settlement.

17          **1.      Objections.**

18          Class members objecting to the terms of the settlement must do so in writing at least forty

19  (40) days prior to the scheduled Fairness Hearing.  The written objection must be sent to the

20  Claims Administrator on or before the date specified in the Preliminary Approval Order.  The

21  Claims Administrator will record the date of receipt of the objection and forward it to both

22  Abercrombie and Lead Counsel within two (2) business days following receipt.  The Claims

23  Administrator will also file the original objections with the Clerk of the Court no later than five

24  (5) days prior to the scheduled Fairness Hearing date.  The Claims Administrator shall retain

25  copies of all written objections until such time as it has completed its duties and responsibilities

26  under this Decree.

27

28

## 2.     Exclusions.

Class members may exclude themselves, or opt-out, of the monetary relief provisions of the class settlement.  Any request for exclusion must be in the form of a written "Opt-out" statement sent to the Claims Administrator.  Information on how to opt-out of the settlement shall be made available by the Claims Administrator.  A person wishing to opt-out must sign a statement which includes the following language:

> I understand that I am requesting to be excluded from the class monetary settlement and that I will receive no money from the settlement fund created under the Consent Decree entered into by Abercrombie.  I understand that if I am excluded from the class monetary settlement, I may bring a separate legal action seeking damages, but may receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case.  I also understand that I may not seek exclusion from the class for injunctive relief and that I am bound by the injunctive provisions of the Consent Decree entered into by Abercrombie.

A class member submitting an Opt-out statement shall sign and date the statement and deliver it to the Claims Administrator at least forty (40) days prior to the scheduled Fairness Hearing, as specified in the Preliminary Approval Order.

The Claims Administrator shall date stamp the original of any Opt-out statement and serve copies on both Abercrombie and Lead Counsel within two (2) business days of receipt of such statement.  The Claims Administrator will also file the original Opt-out statements with the Clerk of the Court no later than five (5) days prior to the scheduled Fairness Hearing date.  The Claims Administrator shall retain copies of all Opt-out statements until such time as it has completed its duties and responsibilities under this Decree.

## 3.     Rescission of Class Member Opt-Outs

The parties recognize that some class members who initially submit Opt-out forms seeking exclusion may, upon further reflection, wish to withdraw or rescind such Opt-out statements.  The parties agree that class members shall be permitted to withdraw or rescind their Opt-out statements by submitting a "Rescission of Opt-out" statement to the Claims Administrator. The Rescission of Opt-out statement shall include the following language:

> I previously submitted an Opt-out statement seeking exclusion from the class monetary settlement. I have reconsidered and wish to withdraw my Opt-out statement. I understand that by rescinding my Opt-out I may be eligible to receive an award from the claims settlement fund and may not bring a separate legal action against Abercrombie seeking damages.

A class member submitting such a rescission statement shall sign and date the statement and cause it to be delivered to the Claims Administrator no later than the deadline for claims filing period specified in the Preliminary Approval Order.

The Claims Administrator shall stamp the date received on the original of any Rescission of Opt-out statement and serve copies to counsel for Abercrombie and Lead Counsel no later than (2) days after receipt thereof and shall file the date-stamped originals with the Clerk of the Court no later than five (5) business days prior to the date of the Fairness Hearing. The Claims Administrator shall retain copies of all Rescissions of Opt-Out statements until such time as the Claims Administrator is relieved of its duties and responsibilities under this Decree.

### 4. <u>Opt-Out Credits.</u>

In the event any Settlement Class member elects to opt-out in the time and manner set forth in Section XVII.D.2, and does not rescind it, Abercrombie shall be entitled to a credit for each such opt-out. The credit amount will be 125% of the average settlement award of all class members eligible to participate in the monetary settlement fund as determined by the Allocation Plan, Section XVII.L. The aggregate credit for each opt-out shall be calculated and deducted from the Settlement Fund prior to the wire transfer of funds set forth in Section XVII.A.4.e.

### 5. <u>Defendant's Rescission of Agreement.</u>

If the number of individuals who opt out of the Settlement Class in the manner provided in this Decree exceeds one percent (1 %) of the number of the class members who submit completed claim forms, then Abercrombie, at its sole option, shall have the right to void this settlement on the tenth (10th) day after the Court requires individuals to return opt out notices. If Abercrombie exercises this option, all of Abercrombie's obligations under the Consent Decree shall cease to be of any force and effect, and the Consent Decree and any orders entered in connection therewith shall be vacated, rescinded, canceled, and annulled, and the parties shall

426266.1

- 52 -

1   return to the status quo in the Consolidated Litigation as if the parties had not entered into the

2   Consent Decree. In addition, in such event, the Consent Decree and all negotiations, court orders

3   and proceedings relating thereto shall be without prejudice to the rights of any and all parties

4   hereto, and evidence relating to the Consent Decree and all negotiations shall not be admissible or

5   discoverable in the Consolidated Litigation or otherwise.

6           **E.      Claims Administration.**

7           The Claims Administrator shall (1) prepare and mail settlement notices and claim forms to

8   class members; (2) establish and operate a website designed to provide information to and

9   communication with class members; (3) receive and evaluate claims eligibility; (4) seek

10  additional information from claimants, when appropriate; (5) receive and file opt-out statements

11  and objections; (6) respond to questions from potential class members; (7) implement the

12  allocation plan; and (8) maintain a toll-free number for communicating with class members; and

13  (9) any other duties necessary to carry out its responsibilities set forth in this Decree.

14          The Claims Administrator shall make claim forms available to potential class members

15  who submit oral, e-mail, or written requests for claim forms.  The Claims Administrator shall

16  mail the requested claim form via first class postage within two (2) business days after receiving a

17  request.  If Abercrombie, or its counsel, receives requests for claim forms or for information

18  regarding the class settlement, it shall refer such requestors to the toll-free number established by

19  the Claims Administrator for the purpose of administering this settlement.  The requestors shall

20  be informed that any requests for claim forms or information should be directed to the Claims

21  Administrator.  The Claims Administrator shall retain copies of all written requests for claim

22  forms and all records of oral or e-mail requests for claim forms until such time as it has

23  completed its duties and responsibilities under this Decree.

24          **F.      Submission of Claim Forms.**

25          Class members who seek recovery of monetary compensation must complete a claim form

26  and cause it to be filed with the Claims Administrator by the claim filing deadline set forth in the

27  Preliminary Approval Order.  The claim form must be postmarked on or before such date in order

28  to be considered timely.  All claim forms must be signed under penalty of perjury to be

considered. Failure to file a timely claim form, for any reason whatsoever, shall bar the potential class member from having his or her claim considered and from receiving monetary compensation from the Settlement Fund Account. Class members who file a claim form must notify the Claims Administrator of any change of address. A failure to notify the Claims Administrator of a change of address may result in the forfeiture of a monetary award. The Claims Administrator shall be available through the toll-free line and via e-mail through the Claims Website to respond to requests from class members for assistance in completing and filing claim forms. Lead Counsel shall also be available to consult with and provide assistance to potential class members who request assistance in completing their claim forms.

### G.  Deceased Claimants.

Claims may be filed by deceased claimants through representatives of their estate if appropriate documentation is provided. Any claims paid to a deceased claimant shall be made payable to the estate of the deceased claimant.

### H.  Determining Eligibility.

The Claims Administrator shall make the determination as to whether a claim form is complete. If it is not complete, the Claims Administrator shall request additional information from the claimant, if it appears that such additional information would complete the Claim Form. Such requests for information shall be in writing and shall specify the information necessary to complete the claim form. The requests for information will be sent via first class mail and inform the claimant that a response must be returned no later than thirty (30) days from the date the request for information was mailed. The claimant must provide the requested information, signed under penalty of perjury, to the Claims Administrator by mail with a postmark no later than thirty (30) days from the date of the mailed request for information. Such additional information shall be considered part of the original claim form and will relate back to the original filing date. The failure of a claimant to timely respond to the request for information may result in the denial of the claim.

1  **I.      Late-Filed Claims.**

2        For claims received after the filing deadline, the Claims Administrator shall notify late-

3  filing claimants that their claims are untimely and that they are not eligible for any monetary

4  award.  The Claims Administrator shall also inform late-filing claimants that they may seek a

5  review of the determination that they filed untimely by requesting the Claims Administrator to

6  reconsider its determination.  The Claims Administrator may reverse its determination that a

7  claim was not timely filed only if the claimant proves that the claim form was filed on or before

8  the filing deadline and that the untimeliness determination is erroneous.

9  **J.      Appeals of Claims Eligibility.**

10       Within ninety (90) days of the close of the claims filing period, all ineligible claimants

11 shall receive written notice of their ineligibility for monetary relief.  Any claimants wishing to

12 seek review of their ineligibility determinations must do so by returning a written request for

13 review to the Claims Administrator by mail with a postmark no later than twenty-one (21) days

14 from the date of the notice of claim ineligibility.  Failure to file a timely request for review shall

15 bar a claimant from challenging a determination of ineligibility.

16       The Claims Administrator shall resolve the requests for review based on the written

17 requests for review and any other documentation or written information submitted by the

18 claimant, or deemed necessary by the Claims Administrator.  The Claims Administrator may seek

19 further written information from the claimant as to the basis of their request and may consider the

20 written arguments of Lead Counsel or Abercrombie.

21       The Claims Administrator shall attempt to expeditiously resolve any requests for review

22 within sixty (60) days after the filing of the request for review.  The Claims Administrator's

23 decisions shall be communicated to the claimant in writing and shall be binding and non-

24 appealable.

25 **K.      Claimant Information Provided by Abercrombie.**

26       The parties understand and agree that Abercrombie may possess information that may

27 assist in the determination of eligibility of potential class members for monetary compensation.

28 Abercrombie shall reasonably cooperate in providing such information which Lead Counsel, the

1   EEOC or the Claims Administrator deems reasonably necessary to assist in determining the

2   eligibility of any class member for monetary relief.  Abercrombie shall attempt to provide such

3   information within fourteen (14) days of any written requests for the information.

4        **L.      Allocation Plan.**

5        Other than the Class Representatives whose monetary awards are separately determined,

6   the disbursement of the Settlement Fund Account to eligible class members shall follow the

7   allocation plan described in this section.

8        Each class member who seeks to receive an award must fill out the claim form and supply

9   information related to his or her claim.  On the basis of a review of the information supplied, the

10  Claims Administrator shall allocate a certain number of points based upon specific factors related

11  to the claims.  The specific factors include length of service with Abercrombie; discrimination

12  claims based on race, national origin or gender in promotion, assignment, hire or termination; any

13  personal injury, such as emotional distress, suffered as a result of the discrimination; and any time

14  or effort devoted to the litigation.  The Claims Administrator shall total the points applicable to all

15  eligible claimants, determine each eligible claimant's proportionate share of the total points, and

16  allocate each eligible claimant's proportionate share of the Settlement Fund Account.

17       For example, if the amount available for distribution from the Settlement Fund Account to

18  eligible class members is $1,000,000.00, and the Claims Administrator has awarded 10,000 points

19  to eligible class members and if an eligible class member were awarded 10 points, then that class

20  member would receive an award of $1,000.00 since each point would be worth $100.00

21  ($1,000,000.00 ÷ 10,000).

22       **M.      Distribution of the Monetary Awards.**

23       As soon as practicable after making the calculations required by the allocation plan set

24  forth in Section XVII.L, the Claims Administrator shall distribute the monetary awards to eligible

25  class members via first class mail.  The Claims Administrator shall only issue the checks in the

26  name of the eligible class members unless Section XVII.G. is applicable.  Included with the check

27  due to the eligible claimant will be a statement showing the gross amount of the payment and an

28  itemized statement of all deductions made.  Flat rate deductions from gross amounts that are

determined to be wage payments will be made for federal and state income taxes, the employee's share of social security and medicare tax, and any local income or payroll tax that applies.  The Claims Administrator will inform Abercrombie of the employer's share of all taxes or contributions (i.e., matching social security and medicare tax) required to be paid by Abercrombie and Abercrombie shall timely remit all such payments to the Claims Administrator for payment to appropriate taxing authorities.

Any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099-INT.  The amounts paid for emotional distress shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

The Claims Administrator will be responsible for preparing and filing all appropriate tax filings and reports (except for any unemployment compensation taxes that may be due, which will be the sole responsibility of Abercrombie to calculate and pay), including, but not limited to, W-2 and 1099 forms for all eligible claimants and Class Representatives for their payments from the Settlement Fund, as well as any required for the Settlement Fund.  The Claims Administrator will also be responsible for reporting and remitting to the appropriate taxing authorities the employer's share of taxes or contributions required to be paid by Abercrombie in a timely manner after receipt of the amount due for those payments from Abercrombie.

**N.     Allocation of Monetary Awards.**

The monetary awards shall be allocated 15% to lost wages and 85% to compensatory damages.

**O.     *Cy Pres* Fund.**

It is the intention of the parties to completely distribute the funds in the Settlement Fund Account.  In the event that checks are returned and the Settlement Fund is not completely distributed for any reason, the remaining sum shall become part of a cy pres fund to be distributed to a non-profit organization or organizations designated by Lead Counsel that assist Minorities or women to obtain equal employment opportunity.

P.     **Report from Claims Administrator.**

Within thirty (30) days of the distribution of the monies from the Settlement Fund, the Claims Administrator shall furnish an accounting of all distributions from the Settlement Fund to the Court with copies to Lead Counsel, the EEOC and Abercrombie.

## XVIII.  ATTORNEYS' FEES, COSTS AND EXPENSES

A.     **Basis for Award of Fees, Costs and Expenses.**

1.     The parties have agreed that it is appropriate as part of the settlement underlying this Consent Decree for Abercrombie to pay to Class Counsel, on behalf of the Class Representatives and the Settlement Class, reasonable attorneys' fees, litigation expenses, and costs in this case.

2.     The Company has agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs in the amount of $7,250,000.00 for work performed and costs and expenses incurred through and including the Approval Date.  Included in this amount is approximately $540,000.00 for litigation costs and expenses incurred by Class Counsel. This amount fully satisfies any arguable obligation the Company may have to pay attorneys' fees, litigation expenses, and costs for and on behalf of the Plaintiffs, Class Representatives and the Settlement Class for any and all work performed and costs and expenses incurred through and including the Approval Date.

3.     The Company also has agreed to pay Class Counsel an amount of reasonable attorneys' fees, litigation expenses, and costs for work required to be performed by Class Counsel after the Approval Date pursuant to this Decree.  The Company agrees that Class Counsel shall be paid such attorneys' fees, expenses and costs in the amount of $600,000.00 for work performed and costs and expenses incurred after the Approval Date relating to defense of the Decree, monitoring, administration and implementation, including, without limitation, evaluating possible compliance with this Decree, including the retention of experts to assist in such evaluation, and defense of the Decree.  Except as provided in Section X.B.9 for appeals of decisions of the Special Master, this amount satisfies any arguable obligation the Company may have to pay attorneys' fees, expenses and costs to Class Counsel for any and all work performed

1  and costs and expenses incurred after the Approval Date of the Decree for the monitoring,

2  administration, implementation and defense of the Decree.

3         4.     Nothing herein shall be interpreted to preclude Abercrombie from seeking

4  attorneys' fees, expenses and costs incurred in litigating enforcement matters according to Title

5  VII law applicable to a prevailing defendant under Section X.B.9. for appeals of decisions of the

6  Special Master.

7       **B.**     **Payment of Award.**

8         1.     Within fourteen (14) days following the Approval Date, Abercrombie shall

9  pay to Lieff, Cabraser, Heimann & Bernstein, LLP one half (½) of the $7,250,000.00 or

10  $3,625,000.00, for litigation-related attorneys' fees, expenses and costs as set forth in Section

11  XVIII.A.2.  Abercrombie shall pay Lieff, Cabraser, Heimann & Bernstein, LLP the remaining

12  amount within fourteen (14) days following the Final Approval Date.  Lieff, Cabraser, Heimann

13  & Bernstein, LLP shall have sole responsibility to distribute attorneys' fees, expenses and costs to

14  other Class Counsel, and if Abercrombie makes such payments to Lieff, Cabraser, Heimann &

15  Bernstein, LLP, no Class Counsel may assert any claim for such payments from Abercrombie.  In

16  the event that Final Approval of the Decree is not attained, Lieff, Cabraser, Heimann & Bernstein,

17  LLP shall return to Abercrombie the initial payment of $3,625,000.00 within fifteen (15) days

18  after the non-approval of the Decree becomes final.

19         2.     The attorneys' fees, expenses and costs awarded and agreed to be paid by

20  the Company pursuant to Section XVIII.A.3. shall be paid to Lieff, Cabraser, Heimann &

21  Bernstein, LLP according to the following schedule:

| Date | Amount |
|---|---|
| Thirty (30) days after the Approval Date | $150,000 |
| March 15, 2006 | $125,000 |
| March 15, 2007 | $100,000 |
| March 15, 2008 | $100,000 |
| March 15, 2009 | $ 75,000 |
| March 15, 2010 | $ 50,000 |

1 If the Decree is terminated prior to March 15, 2011 pursuant to Section VI.B., Abercrombie shall

2 pay to Lieff, Cabraser, Heimann & Bernstein, LLP all attorneys' fees listed above that are unpaid

3 as of the date of the Decree is terminated.  Such payment shall be made no later than fourteen

4 (14) days after the date the Decree is terminated.

5      **IT IS SO ORDERED, ADJUDGED AND DECREED** this <u>14th</u> day of

6 <u>April       </u>, 2005.

7

               s/Susan Illston

8               _____

               SUSAN ILLSTON

9               United States District Judge

               Northern District of California

10

11              Respectfully submitted,

12

13 Thomas A. Saenz       Bill Lann Lee

  Shaheena Ahmad Simons     Kelly M. Dermody

14 MEXICAN AMERICAN LEGAL DEFENSE Eve H. Cervantez

    AND EDUCATIONAL FUND   Elizabeth A. Alexander (pro hac vice)

15 634 South Spring Street, 11th Floor   Jahan C. Sagafi

  Los Angeles, CA  90014     Nirej S. Sekhon

16              LIEFF, CABRASER, HEIMANN

               & BERNSTEIN, LLP

17              275 Battery Street, 30th Floor

               San Francisco, CA  94111-3339

18

  Julie Su          Joseph C. Kohn

19 Minah Park         Martin J. D'Urso

  ASIAN PACIFIC AMERICAN LEGAL  Hilary Cohen

20    CENTER        KOHN, SWIFT & GRAF, P.C.

  1145 Wilshire Blvd., 2nd Floor    One South Broad Street

21 Los Angeles, CA  90017     Philadelphia, PA  19107

22 Kimberly West-Faulcon     Bryan L. Clobes

  NAACP LEGAL DEFENSE AND   Melody Forrester

23    EDUCATIONAL FUND, INC.   Jeffrey D. Lerner

  1055 Wilshire Blvd., Suite 1480    MILLER FAUCHER AND CAFFERTY

24 Los Angeles, CA  90017     One Logan Square, Suite 1700

               Philadelphia, PA  19103

25

  Sidney L. Gold        Cleo Fields

26 Traci M. Greenberg       THE FIELDS LAW FIRM, L.L.C.

  SIDNEY L. GOLD & ASSOCIATES, P.C. 2147 Government Street

27 1835 Market Street       Baton Rouge, LA

  Philadelphia, PA  19103

28

426266.1          **- 60 -**      CONSENT DECREE

                       CASE NOS. 03-2817 SI, 04-4730 & 04-4731

James F. Keller
Zachary Gottesman
GOTTESMAN & ASSOCIATES
2121 URS Center
36 East 7th Street
Cincinnati, OH  45202

Barry L. Goldstein
GOLDSTEIN, DEMCHAK, BALLER,
    BORGEN & DARDARIAN
300 Lakeside Avenue
Oakland, CA 94612

April 11, 2005

/s/ Bill Lann Lee
Bill Lann Lee

April 11, 2005

/s/ Thomas A. Saenz
Thomas A. Saenz
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street
Los Angeles, CA  90014

April 11, 2005

/s/ Martin J. D'Urso
Martin J. D'Urso
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

*Attorneys for Plaintiff Gonzalez, et al.*

Jack W. Lee, Esq. (SBN 071626)
Lisa Duarte, Esq. (SBN 169750)
John Ota, Esq. (SBN 195532)
MINAMI, LEW & TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108

April 11, 2005

/s/ Jack W. Lee
Jack W. Lee

*Attorneys for Plaintiff West, et al.*

1                             ERIC S. DREIBAND
General Counsel

2

JAMES LEE

3                             Deputy General Counsel

4                             GWENDOLYN YOUNG REAMS
Associate General Counsel

5

U.S. EQUAL EMPLOYMENT

6                             OPPORTUNITY COMMISSION
1801 "L" Street, N.W.

7                             Washington, D.C. 20507

8   April 11, 2005              By:     */s/ Anna Y. Park*
                                      ANNA Y. PARK

9                                 Regional Attorney

10                           U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

11                         255 East Temple Street, 4th Floor
Los Angeles, CA 90012

12

April 11, 2005            By:     */s/ Gregory M. Gochanour*

13

14                         JOHN C. HENDRICKSON
Regional Attorney

15                         GREGORY M.GOCHANOUR
Supervisory Trial Attorney

16                         U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

17                         500 West Madison Street, Suite 2800
Chicago, IL 60661

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Douglas R. Young
Sandra A. Kearney
FARELLA BRAUN & MARTEL, LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104

Thomas Brennan Ridgley
Jonathan M. Norman
Sandra J. Anderson
Mark A. Knueve
VORYS, SATER, SEYMOUR & PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

April 11, 2005                    */s/ Thomas Brennan Ridgley*
                                  Thomas Brennan Ridgley

                                  *Attorneys for Defendants*

# EXHIBIT A

**FULL AND FINAL GENERAL RELEASE OF CLAIMS**

The undersigned _____ agrees to this Full and Final General Release of Claims ("Release") as follows:

**Section 1.**    **Benefits**

In consideration of and exchange for this Release, I will receive a payment in a liquidated amount approved by the Court pursuant to the Consent Decree in  Gonzalez, et al. v. Abercrombie & Fitch Stores, Inc., et al. ; EEOC v. Abercrombie & Fitch Stores, Inc., et al. and West, et al. v. Abercrombie & Fitch Stores, Inc., et al. (the "Consolidated Litigation"), less applicable withholdings and deductions, in settlement of my claims, and I will receive no other consideration, whether monetary or otherwise.  I acknowledge that I will receive no cash payment unless and until I sign this Release.

**Section 2.**    **Complete Release**

(a)    **Claims Released**:  I hereby fully, finally, irrevocably and unconditionally release and discharge Abercrombie & Fitch Stores, Inc., A&F California, LLC, A&F Ohio, Inc. and Abercrombie & Fitch Management Co. (collectively, "the Company"), its officers, directors, agents, employees, managers, insurers, attorneys, successors and assigns (the "Released Parties") from any and all past and/or present claims, charges, demands, actions, causes of action, suits, damages, liabilities, assessments, judgments, costs, losses, debts, obligations and expenses, of any and every nature whatsoever, whether or not known, that I have had, now have, or may have from the beginning of time to [the preliminary approval date], including without limitation those arising in any way out of the alleged facts, circumstances and occurrences underlying those allegations of violations of Title VII, Section 1981 and the California FEHA that were asserted or might have been asserted by me or on my behalf in the Consolidated Litigation, or in any and all charges of discrimination filed against the Company and/or the Released Parties by me with the EEOC and/or DFEH.  This Release does not include any workers' compensation claims I may have.  This Release is final and shall survive the expiration of the term of the Consent Decree in the Consolidated Litigation.

(b)    **Unknown Claims:**  I acknowledge that I may not now know fully the number or magnitude of the claims I may have, and that I may suffer some further loss or damage in some way connected with the subject matter of the Consolidated Litigation, but which is unknown or unanticipated at this time.  I have taken these risks and possibilities into account and accept that, nevertheless, this Release covers all claims arising out of or related to the subject matter of the Consolidated Litigation, which, although unknown at the time of the execution of this Consent Decree, may be discovered later.  I understand and assume these risks and expressly waive the provisions of California Civil Code § 1542, or any comparable federal or other state statute, which states:

- 1 -

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
DEBTOR.

I expressly waive any right to assert hereafter that any claim was excluded from this Release
through ignorance, oversight, or error.  It is expressly understood and agreed that this waiver of
Civil Code § 1542 and the release and waiver set forth in this Consent Decree are material terms
of the agreement and were separately negotiated between the parties.

**Section 3.**      **Promises**.

        (a)      **Pursuit of Released Claims:** Except for the *Gonzalez* or *West* Class
Action, and any administrative charges filed with respect to the claims asserted therein, I
represent and warrant that I have not filed or caused to be filed any lawsuit, complaint, or charge
with respect to any Claim that I am releasing herein, and I promise never to file or prosecute a
lawsuit, complaint, or charged based on such Claims.  I promise never to seek any damages,
remedies, or other relief for myself personally (any right to which I hereby waive) by filing or
prosecuting a charge with any administrative agency with respect to any such Claim.  I promise
to request any administrative agency or other body that assumes jurisdiction of any such lawsuit,
complaint, or charge to withdraw from the matter or dismiss the matter with prejudice.

        (b)      **Taxes:** I acknowledge I am solely responsible for paying any federal,
state or local income taxes on amounts I receive because I signed this Release, as well as the
employee's share of F.I.C.A., and will hold the Company harmless with respect to any claims
related to the aforementioned tax treatment of the amount paid to me.

        (c)      **Ownership of Claims:** I represent and warrant that I have not assigned or
transferred any Claim I am purporting to release, nor have I attempted to do so.

        (d)      **Nonadmission of Liability:** I agree that neither this Release nor the
payment of money to me or to the Class pursuant to the Decree is an admission of guilty or
wrongdoing by any of the Released Parties.  I acknowledge that the Released Parties do not
believe or admit that any of them has done anything wrong, such being expressly denied by all of
them.

**Section 4.**      **Consideration of Release**

        I acknowledge that, before signing this Release, I was given a period of at least
twenty-one days in which to consider it.  I further acknowledge that:  (1)  I took advantage of as
much of this period to consider this Release as I desired before signing it; (2) I carefully read this
Release; (3) I fully understand it; (4) I am entering into it voluntarily; (5) I am receiving valuable
consideration in exchange for my execution of this Release that I would not otherwise be entitled
to receive; and (6) the Company, in writing, encouraged me to discuss this Release with my
attorney (at my own expense) before signing it, and that I did so to the full extent I deemed
appropriate.  I understand that I have seven days within which to cancel this Release after I have

executed it and must do so by delivery of an executed written revocation to Mark A. Knueve, Vorys, Sater, Seymour and Pease LLP, 52 East Gay Street, Columbus, Ohio 43215, within the seven-day period.

**Section 5.      Miscellaneous**

(a)      **Entire Agreement:**  This Release may not be modified in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both me and an authorized Company attorney.  I acknowledge that the Company has made no representations or promises to me, other than those in or referred to by this Release.  If any provision in this Release is found to be unenforceable, all other provisions will remain fully enforceable.

(b)      This Release binds my heirs, administrators, representatives, executors, successors, and assigns.

**Section 6.      Interpretation**

This Release shall be construed as a whole according to its fair meaning.  Unless the context indicates otherwise, the term "or" shall be deemed to include the term "and" and the singular or plural number shall be deemed to include the other.  Except to the extent governed by federal law, this Release shall be governed by the statues and common law of the State of California (excluding any that mandate the use of another jurisdiction's laws).

Executed at _____, _____, this _____ day of _____, 2004.


_____
[Name Printed]

## EXHIBIT B

## NOTICE TO ALL ABERCROMBIE EMPLOYEES AND
## APPLICANTS RE SETTLEMENT OF DISCRIMINATION LAWSUIT

This Notice is being posted pursuant to a Consent Decree entered by the federal court resolving the consolidated class action litigation brought against Abercrombie & Fitch by private plaintiffs and the U.S. Equal Employment Opportunity Commission (EEOC) Case Nos. 03-2817 SI, 04-4730, and 04-4731 (N.D. CA).

In the lawsuits, the plaintiffs asserted that Abercrombie violated Title VII of the Civil Rights Act of 1964, by discriminating against African Americans, Asian Americans, Latinos, females, and females of each of the foregoing minority groups on the basis of race, color, national origin and/or gender in recruitment, hiring, promotion and terms and conditions of employment.

Abercrombie has voluntarily entered into this Decree because the actions it has agreed to undertake demonstrate its strong commitment to diversity and equal employment opportunity.

Abercrombie believes that it has not engaged in any policy or pattern or practice of unlawful discrimination, and that it has not engaged in any other unlawful conduct as alleged in the consolidated litigation.  Abercrombie has agreed to:

1) not discriminate against African Americans, Latinos, Asian Americans, women or women of any of the foregoing minority groups on the basis of race, color, national origin and/or gender in recruitment, hiring, promotion or terms and conditions of employment;

2) not retaliate against any person because she or he opposed discrimination on the basis of race, color, national origin, or gender, filed a charge of discrimination on the basis of race, color, national origin, or gender, or asserted any rights under the Consent Decree; and

3) hire a Monitor to ensure Abercrombie's compliance with the terms of the Consent Decree.

A summary and copy of the Consent Decree are available at **[domain name].**

Abercrombie's policy and federal law prohibit discrimination in employment on the basis of sex, race, color, religion, national origin, disability, and age.  If you believe you have been discriminated against by Abercrombie, you may utilize the Internal Complaint Procedure published in the Associate Handbook by contacting your manager or the Human Resources Department at 614/283-5548.  You may also contact the Monitor, **[name]**, at **[email address]** or by calling _____ and/or the Equal Employment Opportunity Commission (EEOC) at **[email address]** or by calling _____.  The EEOC is the federal agency that enforces the federal laws prohibiting discrimination in employment on the basis of sex, race, color, religion, national origin, disability, and age.

**This is an Official Notice and must not be defaced or covered.  This Notice shall remain posted until _____.  If you have any questions about this Notice contact the Monitor or the EEOC at the numbers listed above.**

359203.1

**EXHIBIT C**
**LIQUIDATED AMOUNTS FOR CLASS REPRESENTATIVES AND CHARGING PARTIES**

| **Named Plaintiffs** | |
|---|---|
| | |
| Chu, Austin | $17,000 |
| Culpepper, David | $11,000 |
| Douglass, Patrice | $12,000 |
| Fight, Eric | $13,000 |
| Gómez-Mont., Juancarlos | $39,000 |
| Gonzalez, Eduardo | $13,000 |
| Grubb, Carla | $17,000 |
| Gutierrez, Encarnacion | $16,000 |
| Hawk, Brandy | $18,000 |
| Lu, Jennifer | $21,000 |
| Montoya, Johan | $13,000 |
| Nguyen, Ivy | $19,000 |
| Ocampo, Anthony | $19,000 |
| Sherrod, Robair | $8,000 |
| Steele, Andre | $24,000 |
| West, Elizabeth | $9,000 |
| Wu, Angeline | $21,000 |
| | |
| **Charging Parties** | |
| Bondurant, Lekisha | $10,000 |
| Dixon, Torrey | $12,000 |
| Elmore, Stanley | $12,000 |
| Greer, Timothy | $16,000 |
| Jason, Eric | $8,000 |
| Noel, Jason | $12,000 |
| | |
| **Total (23 individuals)** | **$360,000** |